## The Stanley Works *vs.* William H. Hackett, Tax Commissioner.

Maltbie, C. J., Hinman, Banks, Avery and Brown, Js.

Argued February 4th—decided March 4th, 1937.

*James W. Cooper,* with whom, on the brief, was *Arthur L. Corbin, Jr.,* for the appellant (plaintiff).

*Richard F. Corkey,* Assistant Attorney General, with whom, on the brief, were *Edward J. Daly,* Attorney General, and *Charles J. McLaughlin,* Deputy Attorney General, for the appellee (defendant).

MALTBIE, C. J. The plaintiff is a corporation organized under the laws of this State and having its principal office and place of business in New Britain. It is engaged in manufacturing, buying, selling, and otherwise dealing in metal and hardware in this and several other States. It is authorized under its charter and the General Statutes to buy, sell and hold stock in other corporations, and in the year 1935 it did hold the stock of three Canadian corporations. It is liable to pay the State a corporation business tax under the provisions of Chapter 66b of the Cumulative Supplement of the General Statutes, 1935. In March, 1936, it made the required return to the tax commissioner for the fiscal year of 1935. This showed that it had made a profit during the year such that it was liable for more than the minimum tax provided in the chapter. In the return it stated that it had received the sum of $720,975 in dividends upon the stock held by it in the Canadian corporations, but it did not include this sum in computing the amount of the tax payable. The tax commissioner overruled the plaintiff's claim that this amount should not be included in the computation of the tax and imposed an additional tax of $14,168.99 on account of this item, which was paid by the plaintiff, under protest. Our advice is requested upon two questions, but it is only necessary to consider the first: Whether the tax commissioner erred in including in the computation of the tax the dividends received by the plaintiff upon the stock owned by it in the Canadian corporations.

The plaintiff is the sole owner of the stock of the

three Canadian corporations. They are under the active management of managers resident in Canada. They carry on no trade or business in the United States, but they do carry on in Canada a business of a similar type to that of the plaintiff in this country. Part of the dividends in question were paid from earnings of the corporations in 1935, but the larger portion represented surplus or undivided profits earned during the period from 1919 to the end of 1934. The Canadian corporations paid substantial income taxes to the Dominion of Canada based upon the income from which the dividends were paid and the plaintiff has not received the benefit of any tax allocation outside the State on account of the business done by them.

Chapter 66b of the Cumulative Supplement of 1935, as far as applicable to the case before us, requires every corporation within its scope to pay annually "a tax or excise upon its franchise for the privilege of carrying on or doing business within the state, such tax to be measured by the entire net income as herein defined received by such corporation or association from business transacted within the state during the income year." § 418c. It is provided that there shall be deducted from the corporation's gross income all items deductible under the federal corporation net income tax law in force on the last day of the income year, with certain exceptions not relevant to our discussion, and also interest or rent paid by the corporation during the year. § 419c.

Section 420c begins with the statement: "If the trade or business of the taxpayer shall be carried on partly without the state, the business tax shall be imposed on a base which reasonably represents the proportion of the trade or business carried on within the state." The section then establishes a basis upon

which corporate income shall be allocated when a corporation does business outside the State. The section is divided into three parts. The first deals with "interest, dividends, royalties and gains from sales of intangible assets." As we shall quote this provision later, it is sufficient now to point out that where the corporation has its principal place of business within the State, these items are to be allocated to the State, but where it has its principal place of business without the State they are to be allocated without the State, with a proviso that they shall be allocated within or without the State according as they clearly appear to have been received in connection with business within or without it. The second part of the section deals with gains from the sale or rental of tangible capital assets not in the regular course of business, and the basis of allocation is the actual situation of the property within or without the State. The third part gives the basis of computing the tax in the case of income derived from business other than the manufacture, sale or use of tangible personal or real property, the allocation to be made under rules established by the tax commissioner, and also in the case of income derived from the manufacture, sale or use of tangible personal or real property; and as to this last it is provided that the amount of the income allocated to this State shall be determined upon the basis of three factors, the proportionate value of the tangible property within the State, the proportionate amount of salaries and wages paid from offices or places of business within the State, and the proportion of gross receipts from sales or other sources assignable to offices, agencies or places of business within the State.

Sections 421c and 422c provide a minimum tax payable where the amount of such minimum determined as provided in the statute would be larger than that

imposed under the preceding section. This tax is based not on income but in general upon the capital stock, interest-bearing indebtedness, and surplus and undivided profits, with a provision for an allocation to this State of a proportion of the value of the assets based upon tax situs of the property within or without the State, but excluding from the computation the amount of any holding of stock of private corporations. Section 423c provides that the tax commissioner, when he concludes that the method of allocation prescribed is inapplicable and inequitable as regards any corporation, shall redetermine the tax base by such other method of allocation and apportionment "as shall seem best calculated to assign to the state for taxation the portion of the business reasonably attributable to the state."

The tax established in this Chapter is "in the nature of an excise tax levied against domestic and foreign corporations alike, for the privilege of doing business in a corporate capacity within this State." *Underwood Typewriter Co.* v. *Chamberlain,* 94 Conn. 47, 55, 108 Atl. 154; *Bass, Ratcliff & Gretton, Ltd.* v. *Tax Commissioner,* 266 U. S. 271, 280, 45 Sup. Ct. 82; *National Leather Co.* v. *Massachusetts,* 277 U. S. 413, 423, 48 Sup. Ct. 534. The statute makes no distinction with reference to property located or business done without the State between other States and foreign countries. Throughout the law, in speaking of property not located or business not done within the State the phrase used is simply "without the state." The various methods of allocation provided are designed to restrict the tax to business done within the State, as expressed in § 423c, "to assign to the state for taxation the portion of the business reasonably attributable to the state." There is also apparent a purpose to avoid double taxation, illustrated by the

exemption of stock of corporations organized under the laws of other States, of which we shall speak later, and by the exception, in the method provided for determining the minimum tax, of the stock of other private corporations held by it, in regard to neither of which is any distinction made between corporations chartered in other States and those by foreign countries.

The statute specifically provides for the deduction from gross income of the same deductions allowed under the federal corporation net income tax, with certain exceptions, and an examination of the returns made by the plaintiff shows that in large part the items call for the same statements made in the federal tax return. There is, then, significance in a comparison between the terms of the federal act and of the statute. The federal act provides: "In computing net income there shall be allowed as deductions . . . in the case of a corporation, the amount received as dividends from a domestic corporation which is subject to taxation under this title." U. S. C. A., Title 26, § 23 (p). That act makes no similar provision as to dividends received by a domestic corporation upon stock held in a foreign corporation, but it does allow a domestic corporation a credit upon the tax payable under the act where it owns a majority of the voting stock of the foreign corporation, the amount of which is determined by a rather complicated method of computation. U. S. C. A., Title 26, § 131 (f); United States Treasury Department Regulation 86, Articles 131-7, 131-8; Regulation 94, Articles 131-7, 131-8. In one way or the other under the federal act a corporation thus gets credit for an income tax paid by its subsidiary corporation whether it be domestic or foreign.

The general provision in our statute that a corpora-

tion is entitled to the same deductions allowed under the federal act, is interpreted by the tax commissioner, as appears from the return in evidence, in accordance with its evident intent, as permitting a Connecticut corporation to deduct in determining its net income, dividends received upon the stock of corporations of other States. Our law does not contain any specific provision as to any allowance made on account of taxes paid upon the income of foreign subsidiary corporations corresponding to that in the federal act. If the dividends received from such a corporation are not to be considered in computing the net income, then our statute falls short of the federal act in the protection it affords against double taxation. We should construe the statute, in case of doubt, so as to avoid such taxation. *State* v. *Murphy,* 90 Conn. 662, 666, 98 Atl. 343. That the inclusion of all dividends of foreign corporations in computing the tax might well result in double taxation the facts of the case before us illustrate.

We are not here concerned with the bare question whether in measuring a tax imposed upon a corporation for the privilege of doing business in a State dividends received upon the stock of other corporations may be included with income it receives from other sources. See *McCoach* v. *Minehill & S. H. R. Co.,* 228 U. S. 295, 308, 33 Sup. Ct. 419. The question before us is whether, in working out the scheme of the statute for the allocation of income within and without the State, dividends upon the stock of the Canadian corporations fall within one class or the other. The specific provision of the statute determinative of the present case is as follows: "Interest, dividends, royalties and gains from sales of intangible assets, less related expenses, when received by a company having its principal place of business within the state,

shall be allocated to the state and, when received by a company having its principal place of business without the state, shall be allocated without the state; provided, when it can be clearly established that such income is received in connection with business within the state, such income shall be allocated to the state without regard to the location of the principal place of business of the taxpayer, and a similar rule shall apply to such income received in connection with business without the state." § 420c (1).

The method of allocation provided is applied to net income. As under the provision concerning deductions dividends upon the stock of domestic corporations are in general to be deducted in the determination of the net income, it follows that the word "dividends" as used in the quotation above can only refer to dividends upon the stock of the small class of corporations of this country which do not pay a federal income tax or dividends received upon stock of foreign corporations. The State contends that the phrase "in connection with business within the state" and the corresponding phrase with reference to "business without the state" refers only to the business done by the corporation itself within or without the State, that the business done by the Canadian corporations cannot properly be regarded as business done by the plaintiff and that therefore the provision is not applicable. While for many purposes the law might not regard the plaintiff as doing business in Canada by reason of the ownership of all the stock in the Canadian corporations, in our approach to tax legislation we may properly view it from the standpoint of substance and not of form; Cardozo, J., *People ex rel. Alpha Portland Cement Co.* v. *Knapp*, 230 N. Y. 48, 57, 129 N. E. 202; and, if we do, we cannot avoid the conclusion that the plaintiff "made use of the activities of these

subsidiary corporations as essential parts of its business;" *National Leather Co. v. Commonwealth,* 256 Mass. 419, 423, 152 N. E. 916; and that it "did, in a very real and practical sense, employ these stocks as an instrumentality in carrying on its business;" *National Leather Co. v. Massachusetts,* 277 U. S. 413, 424, 48 Sup. Ct. 534; so that the business of the Canadian corporations might be regarded as its business.

Moreover, the contention of the State would necessarily exclude all "dividends" received by the plaintiff from the operation of the provision in question, because they could only represent ownership of stock of corporations other than the plaintiff. This would require that the words "such income" be related to the other three items mentioned at the beginning of the provision to the exclusion of "dividends;" and such a grammatical construction has no warrant in the terms of the statute. In fact the use of the broad words "in connection with business" has significance, for had the narrower construction contended for by the State been intended, it would have been natural for the Legislature to use a phrase with a more restricted meaning. The intent of the statute as regards "dividends" within the scope of this provision evidently was to substitute for the complicated provisions of the federal act designed to afford protection against double taxation as regards dividends not deductible in determining net income, a simpler provision applicable alike to them and to the other types of income dealt with in this portion of the law. As in this case the dividends in question were all earned upon business done in the Dominion of Canada, they should be allocated without the State.

To the first question in the reservation, whether or not the tax commissioner erred in including in his

computation of the tax levied against the plaintiff the dividends received on account of the ownership of stock in the Canadian corporations, we answer "Yes." This makes it unnecessary to consider the second question asked.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.