KEY AIR, INC. *v.* COMMISSIONER OF REVENUE SERVICES
(SC 18167)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

226

Argued September 22—officially released December 1, 2009

*Robert D. Snook,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Paul M. Scimonelli,* assistant attorney general, for the appellant (defendant).

*Jeffrey R. Babbin,* with whom were *David M. Bohonnon* and *David C. Grigsby,* for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether General Statutes § 12-407 (a) (37) (J) (iii)[1] excludes from the sales and use tax pilot training services that a certificated air carrier obtained for its pilots flying qualifying aircraft that are owned by the carrier's customers, who pay fees to cover those training costs. The defendant, the commissioner of revenue services, appeals[2] from the judgment of the trial court sustaining the tax appeal of the plaintiff, Key Air, Inc., from the defendant's assessment of a sales and use tax against the plaintiff for the tax period from July 1, 1997, through June 30, 2000. Because we conclude that the pilot training services in question are excluded from the definition

[1] General Statutes § 12-407 (a) provides in relevant part: "Whenever used in this chapter . . .

\* \* \*

"(37) 'Services' for purposes of subdivision (2) of this subsection, means . . .

\* \* \*

"(J) Business analysis, management, management consulting and public relations services, *excluding* . . . (iii) on and after January 1, 1994, any business analysis, management, management consulting and public relations services when such services are rendered in connection with an aircraft leased or owned by a certificated air carrier or in connection with an aircraft which has a maximum certificated take-off weight of six thousand pounds or more . . . ." (Emphasis added.)

[2] The defendant appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

of taxable business management services pursuant to § 12-407 (a) (37) (J) (iii), we affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. The plaintiff is a Connecticut corporation doing business at the Waterbury-Oxford Airport in Oxford. The plaintiff is a certificated air carrier that contracts with owners of various midsize cabin jet aircraft to operate, maintain and charter their aircraft[3] for commercial operation under its air carrier certificate issued by the Federal Aviation Administration (administration). Pursuant to its contracts with the aircraft owners, the plaintiff is required to provide pilots who are qualified with respect to all administration requirements to fly the relevant aircraft and, accordingly, the plaintiff purchases pilot training services, as prescribed by administration regulations; see generally 14 C.F.R. § 135 et seq.; from vendors located in various other states. The plaintiff pays those vendors for the cost of that training and, in turn, charges those fees back to the aircraft owners.

On November 21, 2002, the defendant conducted a sales and use tax audit of the plaintiff's business and concluded that, for the audit period from July 1, 1997, through June 30, 2000, the plaintiff had failed to pay sales and use taxes associated with its purchase of pilot training services from the out-of-state vendors. The plaintiff protested the imposition of a sales and use tax on these transactions to the defendant, which upheld the tax assessment.

The plaintiff then appealed from the deficiency assessment to the Superior Court pursuant to General

---

[3] All of the relevant aircraft that the plaintiff manages or operates have a take-off weight in excess of 6000 pounds.

Statutes § 12-422,[4] contending, inter alia, that § 12-407 (a) (37) (J) (iii) excluded pilot training services from the general definition of taxable services. After a trial to the court, the trial court concluded that the pilot training services were excluded from the definition of taxable business management services pursuant to § 12-407 (a) (37) (J) (iii), and thus were not taxable under the Sales and Use Taxes Act (act), General Statutes § 12-406 et seq. Specifically, the court concluded that the operative phrase in the definition "in connection with [a qualified] aircraft," as utilized in § 12-407 (a) (37) (J) (iii), has a broad meaning that simply required a causal relationship between the services and the aircraft. Accordingly, the trial court rendered judgment sustaining the plaintiff's tax appeal.[5] Thereafter, the defendant filed a motion for reargument and reconsideration with the trial court, which subsequently denied

[4] General Statutes § 12-422 provides in relevant part: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of New Britain . . . . Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the Treasurer to pay the amount of such relief, with interest . . . to the aggrieved taxpayer. . . ."

[5] The trial court also had noted in its decision the fact that the services were delivered out of state and appeared to suggest that this fact might render the services nontaxable under General Statutes § 12-411. Thereafter, the defendant moved for an articulation of the trial court's judgment, asking that court to clarify whether the sole basis for sustaining the plaintiff's appeal was its determination that the pilot training services came within the exclusion from sales and use taxes set forth in § 12-407 (a) (37) (J) (iii). In its articulation, the court stated that its decision to sustain the plaintiff's appeal was, in fact, based on its determination that the services in question came within the scope of § 12-407 (a) (37) (J) (iii). The trial court added that its discussion, in its memorandum of decision, of whether the services were consumed, for purposes of the act, in either Connecticut or in the other states in which the training actually had occurred, was "[n]ot central to the main issue" of the exclusion from taxation of the services in question pursuant to § 12-407 (a) (37) (J) (iii).

that motion. This appeal followed. See footnote 2 of this opinion.

On appeal, the defendant claims that the trial court improperly concluded that the plaintiff's purchase of the pilot training services came within the scope of § 12-407 (a) (37) (J) (iii), by disregarding both the transactional nature of the sales and use tax and the well established principles of tax construction governing tax exemptions—namely that exemptions are strictly construed against the party seeking the exemption. More specifically, the defendant contends that the trial court improperly focused on the reimbursement transactions between the plaintiff and the aircraft owners as the basis for concluding that the pilot training services— provided by out-of-state vendors and used and consumed by the plaintiff—were used "in connection with" qualifying aircraft pursuant to § 12-407 (a) (37) (J) (iii). The defendant proposes that the trial court should have examined the transaction for the pilot training services between the vendors and the plaintiff independently of the reimbursement transactions between the plaintiff and the aircraft owners to discern whether the former services were used in connection with qualifying aircraft. Further, the defendant contends that the trial court improperly interpreted the phrase "in connection with" in § 12-407 (a) (37) (J) (iii) to mean that there must be only a causal relationship between the pilot training services and the operation of the qualifying aircraft.

In response, the plaintiff contends that the trial court properly concluded that the pilot training services at issue were rendered in connection with qualifying aircraft pursuant to § 12-407 (a) (37) (J) (iii). The plaintiff claims that the court's construction of the "in connection with" language of the statute was based on the statute's plain and unambiguous meaning and, therefore, that it is unnecessary to use a judicial presumption

to construe the statute. The plaintiff also asserts, however, that even if this court concludes that such an ambiguity does, in fact, exist, the applicable presumption would be one in favor of the plaintiff as taxpayer, because § 12-407 (a) (37) (J) (iii) does not establish a tax exemption, but rather addresses the imposition of a tax and, thus, implicates an exclusion from the definition of a taxable service for purposes of the sales and use tax. We agree with the plaintiff that the trial court properly determined that the language of the statute is plain and unambiguous and that the plaintiff's purchase of job related pilot training services is excluded from the definition of taxable business management services pursuant to § 12-407 (a) (37) (J) (iii).[6]

As a preliminary matter, we set forth the applicable standard of review. "[A] sales and use tax appeal taken pursuant to § 12-422 is a trial de novo." (Internal quotation marks omitted.) *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 371, 977 A.2d 650 (2009). Consequently, "[t]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Leonard*

---

[6] Although, in its articulation, the trial court disavowed any reliance on the fact that the training services were rendered out of state; see footnote 5 of this opinion; the defendant also claims on appeal that the trial court improperly applied General Statutes § 12-411 in concluding that the pilot training services at issue were not subject to the use tax. We do not reach this claim, however, in light of our conclusion that the trial court properly determined that the plaintiff's purchase of pilot training services came within the scope of the exclusion contained in § 12-407 (a) (37) (J) (iii).

v. *Commissioner of Revenue Services*, 264 Conn. 286, 294, 823 A.2d 1184 (2003).

Furthermore, the defendant's claim challenging the trial court's interpretation of the phrase "in connection with" in § 12-407 (a) (37) (J) (iii), which is an issue of first impression,[7] is a "[question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Internal quotation marks omitted.) *Rainforest Cafe, Inc.* v. *Dept. of Reve-*

---

[7] We note that identical language is present in other definitions within § 12-407 (a). See General Statutes § 12-407 (a) (15) (A) (" '[e]ngaged in business in the state' means and includes but shall not be limited to the following acts or methods of transacting business: [i] Selling in this state, or any activity in this state *in connection with* selling in this state, tangible personal property for use, storage or consumption within the state" [emphasis added]); General Statutes § 12-407 (a) (29) (" '[p]atient care services' means therapeutic and diagnostic medical services provided by the hospital to inpatients and outpatients including tangible personal property transferred *in connection with* such services" [emphasis added]); General Statutes § 12-407 (a) (37) (" '[s]ervices' for purposes of subdivision [2] of this subsection, means . . . [A] [c]omputer and data processing services, including, but not limited to, time, programming, code writing, modification of existing programs, feasibility studies and installation and implementation of software programs and systems even where such services are rendered *in connection with* the development, creation or production of canned or custom software or the license of custom software, and exclusive of services rendered *in connection with* the creation, development hosting or maintenance of all or part of a web site" [emphasis added]); General Statutes § 12-407 (a) (41) (" '[v]ertical service' means an ancillary service that is offered *in connection with* one or more telecommunications services" [emphasis added]). We previously have not, however, analyzed the meaning of the "in connection with" phrase in any of these other provisions.

*nue Services,* supra, 293 Conn. 371–72. "In seeking to determine that meaning . . . [General Statutes] § 1-2z[8] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 372.

In addition to these principles, "we are also guided by the applicable rules of statutory construction specifically associated with the interpretation of tax statutes." (Internal quotation marks omitted.) *Old Farms Associates* v. *Commissioner of Revenue Services,* 279 Conn. 465, 481, 903 A.2d 152 (2006). In the present case, § 12-407 (a) (37) (J) addresses the imposition of a tax. "[W]hen the issue is the imposition of a tax, rather than a claimed right to an exemption or a deduction, the governing authorities must be strictly construed against the commissioner [of revenue services] and in favor of the taxpayer." (Internal quotation marks omitted.) Id.

In accordance with § 1-2z, we begin our analysis with the text of § 12-407 (a) (37) (J) (iii). To provide a framework for this provision, we briefly survey its statutory

---

[8] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

context. Section 12-407 generally defines terms used within the act. Subdivision (2) of subsection (a) provides a list of enumerated actions that constitute " '[s]ale' " and " 'selling' " for purposes of the act, which includes "[t]he rendering of certain services, as defined in subdivision (37) of this subsection, for a consideration, exclusive of such services rendered by an employee for the employer . . . ." General Statutes § 12-407 (a) (2) (I). In turn, subdivision (37) defines over thirty categories of services that are taxable under the act. General Statutes § 12-407 (a) (37) (A) through (FF). Specifically, § 12-407 (a) (37) (J) (iii), the provision at issue in this appeal, provides in relevant part: " 'Services' for purposes of subdivision (2) of this subsection, means . . . (J) [b]usiness analysis, management, management consulting and public relations services, *excluding* . . . (iii) . . . any business analysis, management, management consulting and public relations services when such services are rendered in connection with an aircraft leased or owned by a certificated air carrier or *in connection with* an aircraft which has a maximum certificated take-off weight of six thousand pounds or more . . . ." (Emphasis added.)

It is undisputed that the pilot training services in question are business management services under § 12-407 (a) (37) (J) (iii) and as defined by the defendant's regulations,[9] and that the size of the clients' aircraft comes within the ambit of that statute. The defendant

---

[9] The relevant regulations define "[b]usiness management services" as, inter alia, "human resource management activities . . . ." Regs., Conn. State Agencies § 12-407 (2) (i) (J)-1 (e). "Human resources management activities" are, in turn, defined as, inter alia, the "job-related training . . . of personnel. . . . " Regs., Conn. State Agencies § 12-407 (2) (i) (J)-1 (i) (1). Further, both parties agree that the pilot training services at issue come within the scope of "job-related training" in the regulations. Accordingly, with respect to whether the services at issue were subject to the sales and use tax, our analysis is limited to whether the services were rendered "in connection with" the qualifying aircraft.

contends, however, that the exclusion does not apply because the pilot training services were not "rendered in connection with" qualifying aircraft but, rather, instead were used and consumed solely by the plaintiff, independently of the reimbursement transactions between the plaintiff and the aircraft owners.

In construing this statutory language, we must first consider the text of § 12-407 (a) (37) (J) (iii) to discern whether the phrase "in connection with" is "plain and unambiguous and does not yield absurd or unworkable results . . . ." (Internal quotation marks omitted.) *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services,* supra, 293 Conn. 372. Reviewing the act in its totality, we first note that the phrase "in connection with" is not defined anywhere therein. See also footnote 7 of this opinion. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services,* supra, 374.

The dictionary defines the word "connection" as, inter alia, a "causal or logical relation or sequence . . . contextual relation or association . . . [or] relationship in fact . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). Accordingly, the plain meaning of the statutory phrase "in connection with" necessarily includes *any* factual, contextual or causal relationship. Thus, with respect to the pilot training services at issue, the plain meaning of the words "in connection with" implies that, if the services have some cognizable relation or association with the statutorily identified air-

craft, those services are excluded from the definition of taxable business management services pursuant to § 12-407 (a) (37) (J) (iii). Had the legislature intended there to be a narrower meaning of the phrase "in connection with" and, thus, a narrower exclusion of taxable business management services, it could have either: (1) used clarifying language to narrow the scope of the phrase "in connection with"; or (2) used language other than "in connection with" that has a more restrictive meaning. Moreover, in contrast to the first provision of clause (iii), which is limited to "aircraft leased or owned by a certificated air carrier," the second provision of clause (iii) provides for a broad exclusion for services "rendered in connection with an aircraft," as long as such aircraft weighs over 6000 pounds. General Statutes § 12-107 (a) (37) (J) (iii). A broad interpretation of the "in connection with" language is, thus, consistent with such an expansive provision. See *Stanley Works* v. *Hackett*, 122 Conn. 547, 555, 190 A. 743 (1937) ("the use of the broad words 'in connection with business' has significance, for had the narrower construction contended for by the [s]tate been intended, it would have been natural for the [l]egislature to use a phrase with a more restricted meaning").

Our understanding of the plain meaning of the definition of "connection" is consistent with this court's construction in tax cases of the meaning of the phrase "in connection with . . . ." For example, in *Stanley Works* v. *Hackett*, supra, 122 Conn. 548–49, this court considered whether a corporation, having its principal place of business in Connecticut, but receiving dividends in three Canadian corporations doing business solely in Canada, received such income "in connection with business without the state" for the purpose of allocating those dividends under the former § 420c of the Corporation Business Tax Act. Interpreting the language of the statute "from the standpoint of substance and not of

form"; id., 554; this court concluded that such income had been received "in connection with business without the state," as the Connecticut corporation had "made use of the activities of these subsidiary corporations as essential parts of its business . . . and that it did, in a very real and practical sense, employ these stocks as an instrumentality in carrying on its business . . . ." (Citations omitted; internal quotation marks omitted.) Id., 554–55. Similarly, in construing the now repealed federal cabaret tax statute,[10] federal courts consistently have held that the phrase "in connection with conveys its meaning plainly and does not connote that those things connected are in the relationship of primary and subsidiary." (Internal quotation marks omitted.) *Birmingham* v. *Geer*, 185 F.2d 82, 85 (8th Cir. 1950), cert. denied, 340 U.S. 951, 71 S. Ct. 571, 95 L. Ed. 686 (1951); see also *Avalon Amusement Corp.* v. *United States*, 165 F.2d 653, 654 (7th Cir. 1948) ("[w]e can see no justification for so torturing the plain meaning of the phrase 'in connection with'—it does not connote that those things connected are also in the relationship of primary and subsidiary").[11] Therefore, on the basis of

---

[10] See 26 U.S.C. § 1700 (e) (1) (1946) (defining "cabaret" as, in relevant part, "any . . . hall . . . where music and dancing privileges . . . are afforded the patrons *in connection with* the serving or selling of . . . refreshment" [emphasis added]).

[11] Outside of the tax context, courts consistently have construed the statutory phrase "in connection with" broadly. For instance, § 10 (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (b), prohibits the use of manipulative or deceptive devices "in connection with" the purchase or sale of securities. In *Securities & Exchange Commission* v. *Texas Gulf Sulphur Co.*, 401 F.2d 833, 861 (2d Cir. 1968), cert. denied sub nom. *Coates* v. *Securities & Exchange Commission*, 394 U.S. 976, 89 S. Ct. 1454, 22 L. Ed. 2d 756 (1969), the United States Court of Appeals for the Second Circuit held that the "in connection with" language in this context should be "broadly construed" for the reason that "a corporation's misleading material statement may injure an investor irrespective of whether the corporation itself, or those individuals managing it, are contemporaneously buying or selling the stock of the corporation." See also, e.g., *Alley* v. *Miramon*, 614 F.2d 1372, 1378 n.11 (5th Cir. 1980) ("[t]he plaintiff in [an action predicated upon fraudulent conduct in connection with the purchase or sale of a security] need not establish a direct or close relationship between the fraudulent

the dictionary definition of "connection" and the persuasive value of the broad construction given to the phrase "in connection with" by this court and others in tax statute cases, we conclude that the "in connection with" language in § 12-407 (a) (37) (J) (iii) prescribes a factual, contextual or causal relationship.

The services provided in the present case were job related pilot training services given to the plaintiff's employee pilots by various out-of-state vendors, in order to keep those pilots qualified to perform their jobs as required by administration regulations. Compliance with these administration regulations was an integral part of the relationship between the plaintiff and its client aircraft owners, as evidenced by the language of the operating agreement.[12] Accordingly, without such

transaction and the purchase or sale, but only that the transaction involving the sale '*touch*' the transaction involving the defendant's fraud" [emphasis added]); *United States* v. *Gruenberg*, 989 F.2d 971, 976 (8th Cir. 1993) (same).

Additionally, courts have broadly construed the phrase "in connection with" in the context of private contracts. See, e.g., *Dirk* v. *Amerco Marketing Co.*, 88 Wash. 2d 607, 611, 565 P.2d 90 (1977) (phrase " 'in connection with' " constituted "broader language" than phrase " 'occasioned by' " in indemnification clause); *Jackson* v. *Lajaunie*, 270 So. 2d 859, 864 (La. 1972) (" '[i]n connection with' is a broader term than 'arising out of the use of the premises for the purposes' of a service station" in context of homeowner's policy).

[12] The standard agreement used by the plaintiff with its clients—the owners of the aircraft—is called an "Aircraft Operating Agreement," where the plaintiff is the "[o]perator" and the respective client the "[c]ompany." This operating agreement provides in relevant part that the operator "is in the business of managing, operating and maintaining aircraft; and . . . [the] [c]ompany hereby engages the services of [the] [o]perator and [o]perator hereby agrees to provide such services, in accordance with the terms and conditions set forth herein." The operating agreement additionally provides that the operator will "employ and assign to the operation of the [a]ircraft a minimum of two pilots acceptable to the [c]ompany. In the event that a pilot is unable to perform pilot duties for a requested flight, [the] [o]perator shall supply other qualified flight personnel acceptable to [the] [c]ompany within a reasonable period of time." Pertinent to the administration required pilot training services in question, the operating agreement further provides that "[a]ll pilots will be qualified with respect to all [administration] regulations and [the] [o]wner's and [the] [c]ompany's insurance requirements and will be available for all requested flights when the [a]ircraft is in an airworthy

training, the pilots would not have maintained the qualifications required by the administration and, in turn, would not have been able to operate the owners' aircraft, all of which were subject to statutory exclusion. See footnote 3 of this opinion. The pilot training services were, therefore, "in a very real and practical sense, employ[ed] . . . as an instrumentality in carrying on [the plaintiff's] business . . . ." (Citation omitted; internal quotation marks omitted.) *Stanley Works* v. *Hackett*, supra, 122 Conn. 555.

Thus, the operating agreement, as well as the testimony of Newton Buckner, an accountant who performed services for the plaintiff, which explained the agreement's practical effect,[13] demonstrate that the pilot training services were inextricably linked to the plaintiff's provision of qualified pilots for its clients' aircraft. Further testimonial evidence confirms this conclusion. David Brainard, the plaintiff's vice president and director of maintenance, testified that the pilot training services were job related training that the plaintiff's pilots were required to obtain in order to be authorized to fly the clients' aircraft. Brainard also emphasized

status. [The] [c]ompany agrees that [the] [o]perator's discretion, subject to all [administration] regulations, shall be used in determining crew duty limits and when pilot relief is appropriate." Moreover, the "[o]perator shall supervise and monitor pilot flight and passenger service performance to ensure that all flight personnel conduct themselves in a[n] exemplary manner and maintain a professional standard of personal appearance for all passenger flight activity." Thus, upon a reasonable reading of the operating agreement, the plaintiff has contracted with the aircraft owners to provide qualified pilots to operate their aircraft and, further, such qualified pilots' training services are provided for by the plaintiff, with training expenses charged to the owners.

[13] Buckner testified that the plaintiff "sends the pilot for training. Training occurs. The training has occurred because of [administration] requirements. The training company then bills [the plaintiff]. It identifies the pilot. The pilot is associated with a particular contract, an operating agreement. So then [the plaintiff] turn[s] around and . . . bill[s] back to the owner of that aircraft the cost of that training. . . . And that's consistent with the operating agreement. That's what the operating agreement calls for."

that each pilot's training was specific to the particular aircraft he was designated to fly, stating that the pilots "receive[d] initial training in a specific type of aircraft and then periodic, recurrent training depending on their capacity," and that the training was "specific to the model aircraft that [they were] flying." Having credited this testimony, the trial court properly determined that the pilot training services were indeed "rendered in connection with" the qualifying aircraft pursuant to § 12-407 (a) (37) (J) (iii).

The defendant nonetheless contends that, because § 12-407 (a) (37) (J) (iii) provides for a tax exemption, it must be narrowly construed against the taxpayer. We disagree. The defendant fails to recognize that § 12-407 (a) (37) (J) (iii) does not involve the application of a tax exemption but, rather, the definition of what is taxable in the first instance. See *Plasticrete Block & Supply Corp.* v. *Commissioner of Revenue Services*, 216 Conn. 17, 26, 579 A.2d 20 (1990) ("[t]his language is definitional in nature, and serves to determine whether certain charges are taxable, not whether certain charges that are ordinarily taxable should be exempt from taxation as a matter of legislative grace"); *Hartford Hospital* v. *Hartford*, 160 Conn. 370, 374, 279 A.2d 561 (1971) ("It is to be noted that . . . the statute does not grant an exemption in the technical sense. Rather it merely states a rule of nontaxability. Consequently, it does not come within the rule that tax exemption statutes must be construed strictly against the taxpayer."). Section 12-407 (a) is definitional in nature and, specifically, subparagraph (J) of subdivision (37) defines, inter alia, taxable business management services for purposes of the act. Furthermore, clause (iii) of that provision clearly excludes from the definition of taxable services "any business . . . management . . . services when such services are rendered in connection with an aircraft . . . which has a maximum certificated take-off

weight of six thousand pounds or more . . . ." General Statutes § 12-407 (a) (37) (J) (iii). Thus, the statute creates an *exclusion* from the definition of taxable business management services, not an *exemption* from an otherwise taxable service. Accordingly, as we already have stated, "[w]hen the issue is the imposition of a tax, rather than a claimed right to an exemption or a deduction, the governing authorities must be strictly construed against the commissioner [of revenue services] and in favor of the taxpayer." (Internal quotation marks omitted.) *Old Farms Associates* v. *Commissioner of Revenue Services*, supra, 279 Conn. 481. Therefore, the judicial presumption weighs in favor of the plaintiff, not against it.

We agree with the plaintiff in this case, however, that we need not rely on any presumption because there is no ambiguity in the "in connection with" language of § 12-407 (a) (37) (J) (iii). See *Caulfield* v. *Noble*, 178 Conn. 81, 84, 420 A.2d 1160 (1979) ("this doctrine [of a presumption] applies only in case of a clear ambiguity in language which substantially leaves the statute equally open to different interpretations" [internal quotation marks omitted]); *Curtis* v. *Corbin*, 93 Conn. 648, 657, 107 A. 506 (1919) (same). In the present case there is no clear ambiguity associated with the "in connection with" language of § 12-407 (a) (37) (J) (iii). Under these circumstances, we do not, therefore, need to apply a presumption in favor of the plaintiff. Accordingly, we conclude that the pilot training services at issue are excluded from the definition of taxable business management services pursuant to § 12-407 (a) (37) (J) (iii).

Despite this evidence pointing to a contrary conclusion, the defendant further asserts that the transaction between the plaintiff and the vendors for the pilot training services was separate and distinct, and thus not "rendered in connection with" the plaintiff's provision

of qualified pilots for its clients' statutorily identified aircraft. We disagree. The focus of § 12-407 (a) (37) (J) (iii) is not on who pays for the business management services but, rather, whether the purchase of those services was used "in connection with" the qualifying aircraft. In the defendant's regulations, it acknowledges that, "[i]t is the *nature* of the services being rendered, and not what those services are called or termed by the service provider or service recipient, that determines whether services described in section 12-407 (2) (i) (J) of the general statutes are being rendered." (Emphasis added.) Regs., Conn. State Agencies § 12-407 (2) (i) (J)-1 (c) (1). Moreover, we are guided by the principle that "[i]n tax law . . . substance rather than form determines tax consequences." *Cottage Savings Assn.* v. *Commissioner of Internal Revenue*, 499 U.S. 554, 570, 111 S. Ct. 1503, 113 L. Ed. 2d 589 (1991) (Blackmun, J., concurring in part and dissenting in part), citing *Commissioner of Internal Revenue* v. *Court Holding Co.*, 324 U.S. 331, 334, 65 S. Ct. 707, 89 L. Ed. 981 (1945); see also *Stanley Works* v. *Hackett*, supra, 122 Conn. 554 ("in our approach to tax legislation we may properly view it from the standpoint of substance and not of form"). The trial court, therefore, properly rendered judgment sustaining the plaintiff's appeal.

The judgment is affirmed.

In this opinion the other justices concurred.