' ENTERED NOV 0 5 2014

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-11-403

5/5/2014

CMM-RAC-5-514

DANIEL G. LILLEY LAW OFFICE, P.A.
and DANIEL G. LILLEY,

Plaintiffs

v.

ORDER

JOHN P. FLYNN,

Defendant

The Plaintiffs Daniel G. Lilley Law Office, P.A. and Daniel G. Lilley ("Lilley"), have

moved for summary judgment against the Defendant, John Flynn ("Flynn") on his counterclaims.

Flynn's Answer asserted seven counterclaims: Count I is for breach of contract; Count II is for

fraud in the inducement; Count III is for tortious interference with a prospective economic

advantage; Count IV is for breach and invasion of right to privacy; Count V is for intentional

infliction of emotional distress; Count VI is for quantum meruit; and Count VII is for unjust

enrichment.

Defendant John Flynn, in turn, has cross-moved for a summary judgment finding that the

Original Cases section of the parties' Memorandum of Understanding is an enforceable contract

between Flynn and Lilley concerning the cases Flynn brought from Troubh Heisler to Lilley's

firm. Flynn wants the court to find the original cases section of the MOU to be severable and

enforceable.

Broadly speaking, this case arises from an employment relationship that went entirely

awry. It involves a dispute between Attorneys Lilley and Flynn regarding Flynn's ownership of

transferred cases and Flynn's compensation while he was employed by Lilley at Daniel G. Lilley Law Office, P.A., as well as Flynn's compensation and case ownership after leaving Lilley's law firm, and Lilley's treatment of Flynn and his clients.

## I. FACTUAL BACKGROUND:

Flynn worked at Lilley's firm from February 2009 to June 2011. Prior to joining Lilley's law firm in February 2009, Flynn was an attorney at Troubh Heisler, P.A. He applied to Lilley's firm after seeing a blind ad for an attorney paying a six-figure salary plus bonuses. Flynn brought cases with him from his former firm ("Flynn cases"). Before beginning at Lilley's firm, Flynn drafted a Memorandum of Understanding (MOU) that discussed the employment terms between Lilley and Flynn. The MOU provided that Flynn was to be paid a salary of $115,000.00 per year. The MOU also provided that Flynn was to be paid bonuses "based upon results generated", the amount of which were up to Lilley's discretion, and that some portion of the fees payable to Flynn from the Flynn cases would be payable to Lilley to compensate him for the resources that he provided. The MOU was executed by Lilley and Flynn on January 17, 2009.

During his employment with Lilley, after Lilley relayed news of the firm's financial distress, Flynn offered to reduce his salary from $115,000.00 to $100,000. The parties disagree regarding whether this salary reduction was supposed to be temporary and compensated for, or whether the salary reduction was permanent.

While Flynn was still employed by Lilley, a disagreement developed over their differing interpretations of the MOU and the actual implementation of the MOU. More specifically, the parties disagreed regarding the original cases section of the MOU, which dealt with cases Flynn brought with him from Troubh Heisler . In one Flynn case, *Paige*, Lilley issued Flynn a payment for $50,000.00 to settle their dispute. The parties have differing interpretations regarding the

2

purpose and effect of that payment. The parties also strongly contest how Flynn should be compensated for his win in *Estate of Braley v. Easterm Maine Medical Center*, a medical malpractice matter that secured a judgment of over 2 million dollars. After a series of contentious emails, including a profanity-laden email from Lilley, Flynn announced that he was resigning from Lilley's firm on May 12, 2011. Flynn and Lilley disagree regarding Lilley's behavior and intentions with respect to the case in light of Lilley's decision to obtain a new fee agreement for the case. When Flynn resigned from Lilley's practice, Lilley purportedly decided that a new fee agreement was necessary, because the original fee agreement was not witnessed. The agreement was also changed by Lilley to state that compensation was for the Daniel G. Lilley Law Offices, P.A., rather than simply for counsel.

Flynn states that shortly before he left the firm he was hospitalized due to stress induced conditions. Lilley allegedly told a number of people that Flynn was hospitalized as a result of a heart attack.

When Flynn left Lilley's firm on July 1, 2011, some of Flynn's clients followed him. Lilley responded by sending out attorney's fee lien letters.

II. STANDARD OF REVIEW:

"Summary judgment is appropriate when the record reveals no issues of material fact in dispute. A fact is material if it has the potential to affect the outcome of the case." *Lepage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 9, 909 A.2d 629 (citations omitted).

The Law Court has held that "[s]ummary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18; *see also Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757. If

"a defendant moves for summary judgment, the plaintiff 'must establish a *prima facie* case for each element of her cause of action' that is properly challenged in the defendant's motion." *Curtis*, 2001 ME 158, ¶ 8, 784 A.2d 18 (quoting *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842); *see also Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933.

III. <u>DISCUSSION</u>:

### a. Breach of contract and cross-motion

In order to demonstrate breach of contract, the party bringing the claim must demonstrate that there has been a "(1) breach of a material contract term; (2) causation; and (3) damages." *Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248. Flynn has alleged that the MOU was a contract that was breached by Lilley in three different ways: Lilley breached the contract due to his failure to compensate Flynn for his salary reduction; Lilley breached the contract by retaining Flynn's fees on the Flynn cases; and Lilley breached the contract by failing to pay Flynn bonuses on cases that originated at the Lilley Law Office.

The court finds that there are genuine issues of material fact that preclude summary judgment regarding both Flynn's breach of contract claim, and Flynn's cross-claim for summary judgment that the Original Cases section of the MOU is severable and enforceable.

### 1. Salary reduction

Waiver is defined as "a voluntary or intentional relinquishment of a known right and may be inferred from the acts of the waiving party." *Blue Star Corp. v. CKF Properties, LLC*, 2009 ME 101, ¶ 26, 980 A.2d 1270 (quoting *Interstate Indus. Unif. Rental Serv., Inc. v. Couri Pontiac, Inc.*, 355 A.2d 913, 919 (Me. 1976)); *see also Dep't of Health & Human Servs. v. Pelletier*, 2009

4

ME 11, ¶ 16, 964 A.2d 630 (quotation omitted) ("Waiver is the voluntary and knowing relinquishment of a right and may be shown by a course of conduct signifying a purpose not to stand on a right, and leading, by a reasonable inference, to the conclusion that the right in question will not be insisted upon.") To prevent a party from enforcing a supposedly waived right, the party who is relying on the waiver, must show that they believed that the party planned to voluntarily give up the party's right. *Blue Star Corp.*, 2009 ME 101, ¶ 26, 980 A.2d 1270. In addition, while the Plaintiff contends that a wavier does not have to be permanent, the Law Court has held that "[f]or waiver to apply, there must be a voluntary or intentional decision to permanently relinquish a known right." *Chalet Susse Int'l, Inc. v. Mobil Oil Corp.*, 597 A.2d 1350, 1352 (Me. 1991).

The parties dispute whether or not Flynn waived his right to his salary of $115,000.00 when he volunteered to take a salary cut to $100,000.00 for the economic benefit of the firm. Flynn argues that the salary reduction was a temporary arrangement, brought on by Lilley's claims of financial distress, whereunder Flynn was entitled to be compensated for his salary reduction and reinstated to his original salary. Lilley argues that Flynn waived his right to the salary under the MOU. The Law Court has determined that waiver is an issue of fact. *Interstate Indus. Unif. Rental Serv., Inc. v. Couri Pontiac, Inc.*, 355 A.2d 913, 919 (Me. 1976). In this instance, the parties are presenting contradicting factual accounts regarding the salary reduction.

The parties have presented enough information to show that there is a genuine issue of material fact regarding whether or not Flynn waived his right to his salary of $115,000.00, and whether he is entitled to back-payments for the months during which he was paid $15,000.00 less.

5

### 2. Flynn cases

A contract is ambiguous if it can reasonably be interpreted in different ways. *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989. With regard to ambiguous contracts, the meaning of the contract becomes a question of fact and it is up to the factfinder to interpret the contract. *Id.*

The Original Cases section of the MOU contains ambiguities regarding fees from the Flynn cases, and thereby the court can consider extrinsic evidence. *See Pettee v. Young*, 2001 ME 156, ¶ 8, 783 A.2d 637. "As a general rule parol evidence of additional terms is admissible to supplement a partially integrated written agreement if the additional terms are consistent with the writing." *Rogers v. Jackson*, 2002 ME 140, ¶ 10, 804 A.2d 379. "If a contract leaves open a key term, the law invokes the standard of reasonableness, and courts will supply the needed term." *Ault v. Pakulski*, 520 A.2d 703, 706 (Me. 1987) (Glassman, J., dissenting).

The parties have differing interpretations of the MOU's provisions regarding the Flynn cases, and whether the Original Cases section of the MOU is enforceable. The Original Cases section left the fee arrangement between Lilley and Flynn regarding the Flynn cases unresolved. Provision III of the MOU regarding "Original Cases" contains the following language regarding fees generated from cases brought over by John Flynn to Lilley's firm: "As compensation for the assistance, resources, and staff support from Daniel G. Lilley Law Office in the continuing representation by Mr. Flynn in such cases described above, the parties agree that a percentage of the attorney's fees payable to Mr. Flynn, shall be payable to the Daniel G. Lilley Law Office." (Pl.'s Ex. 1.) The MOU fails to state what percentage of the fees will be payable to Lilley and what percentage of fees will be payable to Flynn. The parties also have starkly different interpretations regarding the meaning of the $50,000.00 payment that Lilley made to Flynn

6

following the *Paige* case, and whether that payment had some sort of effect upon their arrangement going forward with respect to Flynn cases.

At this juncture, genuine issues of material fact remain that preclude finding that the Original Cases section of the MOU was a severable enforceable contract. Because the MOU fails to clearly provide how fees will be apportioned for the Flynn cases, this court denies Flynn's cross-motion for summary judgment. It is important that this court hear additional evidence, and that the jury have the opportunity to decide upon the meaning of the ambiguities in the Original Cases section through fact finding. This denial of Flynn's cross-motion is not a finding that the Original Cases section is not contractually binding. "[L]ack of a key term is not necessarily fatal to the enforcement of a contract, as long as the missing term does not indicate a lack of contractual intent." *Pelletier v. Pelletier*, 2012 ME 15, ¶ 15, 36 A.3d 903.

Flynn has demonstrated that he may be able to demonstrate a breach of contract regarding the Flynn cases. The MOU may be specific enough for the factfinder to be able to decide upon its meaning and determine the parties' liabilities. *See Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 17, 983 A.2d 382. The jury may be capable of supplying the missing material terms in the Original Cases section of the MOU, and it may find that Lilley did or did not breach the contract, and that he owes Flynn compensation for his cases, including the *Braley*[1] case.

Regarding the breach of contract claim with regard to the Flynn cases, this dispute should go to the factfinder to determine the parties' intent regarding this provision, if the missing percentage terms can be supplied, whether the parties ever amended this provision, and, whether Lilley breached the contract.

---

[1] The court notes that Flynn's claims regarding the *Braley* fee are not res judicata, as the Superior Court (Cumberland County, *Wheeler J.*) in *Troubh Heisler v. Lilley*, did not make a finding on the merits regarding Flynn's cross-claim against Lilley. 2013 WL 7934424 (Me. Super. July 30, 2013). The *Troubh Heisler* case is currently up on appeal.

### 3. Lilley cases bonuses

The compensation section of the MOU provides:

> In addition to the base salary, Mr. Flynn shall also be entitled to payment of bonuses based upon results generated. Such bonuses shall be payable at the conclusion of the case after funds are distributed and the amount of said bonuses shall be at the sole discretion of Daniel G. Lilley Law Office. (Def.'s Ex. C).

The use of the words "shall also be entitled" would suggest an obligation for Lilley to pay bonuses to Flynn under circumstances described as "results generated." While the amount of the bonuses was left up to Lilley, this does not necessarily mean that Lilley can award a bonus of zero when Flynn was entitled to a bonus.

There is a genuine factual dispute regarding whether the bonuses were entirely up to his Lilley's discretion, or whether Lilley was under a good faith obligation to award bonuses under certain conditions. Lilley advertised the position as one where compensation would take the form of a base salary as well as bonuses. Lilley's December 4, 2008 email with Flynn also suggested bonuses would be paid on a discretionary basis. Additional information is necessary to determine what "upon results generated" means in the context of the MOU, and to determine whether bonuses should have been awarded to Flynn on the Lilley cases.

It is clear that there is a genuine issue of material fact regarding the amount of bonuses that Flynn was due from cases he worked on for Lilley.

Lastly, while the breach of contract count survives for trial, the court notes that Flynn cannot recover emotional distress damages for his breach of contract claim. The Law Court has noted that emotional distress damages are not usually available for a breach of contract, except in some limited circumstances other courts and the *Restatement (Second) of Contracts* have allowed such damages (for example, cases with contracts involving death or innkeepers and their guests). *See McAfee v. Wright*, 651 A.2d 371, 372-73 (Me. 1994) (Finding "[t]he common thread

8

between these exceptions is that mental distress is a particularly likely result of a breach.") Accordingly, Flynn cannot advance his claim for emotional distress damages resulting from breach of contract.

### b. Fraud in the inducement

From reading Flynn's memoranda, it's unclear whether he is truly advancing a claim for fraudulent inducement or another variation of fraud. In either case, a party can be found

> 'liable for fraud or deceit if he (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to [her] damage.... Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to [her].'

*Francis v. Stinson*, 2000 ME 173, ¶ 38, 760 A.2d 209 (quoting *Letellier v. Small*, 400 A.2d 371, 376 (Me.1979))(alterations in the original). Fraud must be proven by clear and convincing evidence. *See Petit v. Keybank*, 688 A.2d 427, 431 (Me. 1996).

Regardless of the type of fraud claim Flynn plans to assert at trial, Flynn has failed to present a prima facie case of fraud in his Statement of Material Facts. Primarily, Flynn has not demonstrated that Lilley knowingly made false representations to Flynn. While Flynn has demonstrated that he did not receive bonuses on the Lilley cases, and that the compensation that he is owed on the Flynn cases is heavily disputed, he has not proven that when the MOU was drafted and signed Lilley knowingly intended to falsely represent material facts to him. Accordingly, Lilley is granted summary judgment on Flynn's fraudulent inducement claim.

### c. Tortious interference with a prospective economic advantage

To demonstrate tortious interference with a prospective economic advantage (TIPEA) a party must show "(1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798

9

A.2d 1104. The Law Court has held that when a party is asserting what it believes to be a legal right, or when a party is asserting a property right, and that legal or property right turns out to be invalid, those assertions do not constitute fraud or intimidation. *Id.* at 15-16.

Flynn has failed to make a prima facie case of TIPEA. While Flynn has alleged that Lilley sent lien letters to his clients and made a client enter into a new contingent fee agreement, Lilley has argued that he believed that his lien letters were valid and that contingent fee agreements must be witnessed. In addition, Flynn has failed to make a prima facie claim that Lilley's letters, Lilley's disclosures regarding Flynn's health, or the new fee agreement caused damages. Accordingly, Lilley is granted summary judgment on Flynn's claim for TIPEA.

### d. Breach and invasion of right to privacy

Flynn brought his claim for breach and invasion of right to privacy pursuant to the Constitution of the State of Maine, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983. As an initial matter, the Law Court has held:

> In order to state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution ... and that the alleged deprivation was committed under color of state law. Private action, no matter how discriminatory or wrongful, may not be reached through section 1983. *Id.* The same is true of claims brought directly under the Constitution; most rights secured by the Constitution are protected only against infringement by governments.

*Holland v. Sebunya*, 2000 ME 160, ¶ 11, 759 A.2d 205 (quotations and citations omitted) (alterations in the original).

As Flynn is asserting a breach of privacy claim pursuant to the Maine and U.S. Constitutions and § 1983 against Lilley, a private actor, his claim fails. Even if this court were to consider Flynn's claim to be a common law right to privacy claim, he has failed to meet the requirement that Lilley's disclosures "would be highly offensive to a reasonable person." *Loe v.*

10

*Town of Thomaston*, 600 A.2d 1090, 1093 (Me. 1991). Lilley is entitled to summary judgment on this claim.

### e. Intentional Infliction of Emotional Distress

Lilley alleges that Flynn's claim for intentional infliction of emotional distress (IIED), along with his claims that request emotional distress damages, are barred by the Worker's Compensation Act, which provides:

> An employer who has secured the payment of compensation in conformity with sections 401 to 407 is exempt from civil actions, either at common law or under sections 901 to 908; Title 14, sections 8101 to 8118; and Title 18-A, section 2-804, involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries.

39-A M.R.S.A. § 104. "The exclusivity and immunity provisions of the Workers' Compensation Act bar employees from pursuing civil litigation against their employers for injuries incurred in the course of employment." *Li v. C.N. Brown Co.,* 645 A.2d 606, 607 (Me. 1994). Flynn disputes that his injuries were obtained "in the course of employment." It is unnecessary, however, for the court to even come to the conclusion that Flynn's IIED claim is barred, however, as Flynn has failed to make a prima facie case for IIED.

> In order to demonstrate IIED, a party must show:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, Restatement (Second) of Torts s 46, Comment I ; (2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community," Restatement (Second) of Torts s 46, Comment D ; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it." Restatement (Second) of Torts s 46, Comment J.

*Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me. 1979). While it is clear from the parties' statements that the work environment between Lilley and Flynn became acrimonious, that there were and are disputes regarding fees and compensation, that Lilley possessed a temper

11

and used strong language, Flynn has not produced evidence that Lilley's behavior rose to the level of "extreme and outrageous" required to prevail on an IIED claim. Thereby, summary judgment is granted to Lilley on Flynn's IIED claim.

### f. Quantum meruit and unjust enrichment claims

Quantum meruit "also sometimes labeled 'contract implied in fact,' involves recovery for services or materials provided under an implied contract." *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269, 271. The parties' actions lead to the inference of a contract. *Id.* The Law Court in *Paffhausen* distinguished quantum meruit from unjust enrichment. *Id.* The Law Court defined unjust enrichment as "recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay, and the 'damages analysis is based on principles of equity, not contract.'" *Id.* (quoting *Aladdin Elec. Assoc. v. Old Orchard Beach*, 645 A.2d 1142, 1145 (Me.1994)). The Law Court explained that in quantum meruit damages are determined by the value of the services the plaintiff provided, while in unjust enrichment damages are gauged "by the value of what was inequitably retained." *Id.* at 7. In order to prevail on a claim for quantum meruit, a party must demonstrate "'that (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Id.* at 8 (quoting *Bowden v. Grindle*, 651 A.2d 347, 351 (Me.1994)). The performing party must expect to be compensated and the receiving party must intend to compensate the performing party. *Id.*

To succeed on a claim for unjust enrichment, a party must show that "that it conferred a benefit on the other party ... that the other party had appreciation or knowledge of the benefit ... and ... that the acceptance or retention of the benefit was under such circumstances as to make it

inequitable for it to retain the benefit without payment of its value." *Forrest Associates v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 14, 760 A.2d 1041 (quotation marks omitted) (alterations in the original).

Viewed in the light most sympathetic to Flynn, Flynn has asserted a prima facie case that he could expect to be compensated for his work on the Flynn and Lilley cases. Flynn has also made a prima facie case that his work on the Flynn cases benefitted Lilley financially, and that Lilley was obligated to compensate Flynn for his work on the Flynn cases. Genuine issues of material fact remain regarding whether Lilley intended to compensate Flynn for his work on the Flynn cases over and above Flynn's salary, and as regards unjust enrichment, whether Lilley unjustly retained fees and was obligated to compensate Flynn over and above his salary. The court notes that while Lilley has argued that Flynn cannot succeed on an unjust enrichment claim if there was a valid contract in place between the two parties, *see In re Wage Payment Litig.*, 2000 ME 162, ¶ 19, 759 A.2d 217, Flynn's claim for unjust enrichment can proceed as a claim in the alternative. The court finds that Flynn's claims for quantum meruit and unjust enrichment should proceed to trial.

Accordingly, the court **ORDERS** that Plaintiffs' Motion for Summary Judgment is GRANTED as to counts II, III, IV, and V of Defendant's counterclaim, and the Motion is DENIED as to counts I (with the exception of the issue of emotional distress damages, on which summary judgment is granted to the Plaintiffs), VI, and VII. Defendant's cross-motion for summary judgment is DENIED.

13

The clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _May 5, 2014_

Hon. Roland A. Cole
Justice, Superior Court

14

THE DANIEL G LILLEY LAW OFFICE PA ET AL VS JOHN P FLYNN
UTN:AOCSsr  -2011-0088954                    CASE #:PORSC-CV-2011-00403
------------------------------------------------------------------------

01 0000002967  ATTORNEY: FRANCO, MARK
   THREE CANAL PLAZA PO BOX 4630 PORTLAND ME 04112-4630
   F    JOHN P FLYNN                         DEF      RTND    09/26/2011

---------------------------------------------------------------------

02 0000002811          GAYTHWAITE, MARTHA
    ONE PORTLAND SQUARE PO BOX 586 PORTLAND ME 04112-0586

| | | | | |
|---|---|---|---|---|
| T | JOHN P FLYNN | DEF | RTND | 09/20/2011 |

03 0000007848          MCKEE, WALTER
    133 STATE STREET AUGUSTA ME 04330

| | | | | |
|---|---|---|---|---|
| F | THE DANIEL G LILLEY LAW OFFICE PA | PL | RTND | 10/24/2011 |
| F | DANIEL G LILLEY | PL | RTND | 10/24/2011 |