**In re TCW GLOBAL PROJECT FUND II, LTD., TCW Asset Management Company, and Trust Company of the West, Relators.**

**No. 14–08–00116–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 22, 2008.

Rehearing Overruled Dec. 18, 2008.

Michael P. Lynn, Christopher J. Schwegmann, Amanda R. Tyler, Dallas, TX, Mark A. Kirsch, New York, NY, for appellants.

Michael J. Maloney, Jonathan Erik Axelrad, Make Martin, Houston, TX, for appellees.

Panel consists of Justice YATES, GUZMAN, and BROWN.

## OPINION

GUZMAN, Justice.

On February 22, 2008, relators, TCW Global Project Fund II, Ltd., TCW Asset Management Company, and Trust Company of the West, filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (Vernon 2004); *see*

*also* Tex.R.App. P. 52. In the petition, relators ask this court to compel the Honorable William R. Burke, Jr., presiding judge of the 189th District Court of Harris County, to vacate his January 25, 2008 order denying their motion to dismiss based on a forum-selection clause, and grant the same. We deny relators' petition.

## BACKGROUND

TCW Global Fund II, Ltd. is a project fund investing in global energy and infrastructure projects. TCW Asset Management Company is the investment advisor for TCW Global Fund II. Trust Company of the West is an investment manager. Real party in interest, British American Offshore Limited ("BAOL"), is an Aberdeen, Scotland-based offshore drilling company with its principal place of business in London, England. BAOL is a wholly-owned subsidiary of Houston-based Rowan Companies, Inc. BAOL markets Rowan's Gorilla-class drilling rigs for use in the North Sea.

In January 2002, the U.K. Department of Trade and Industry awarded certain oil drilling interests in the Ardmore Field, located in the U.K. sector of the North Sea, to Tuscan Energy (Scotland) Limited ("Tuscan") and its joint venture partner Acorn North Sea Limited ("Acorn"). Ardmore Field was brought into production in 1975, and abandoned in 1992. Tuscan and Acorn believed that industry technology had developed such that further development of the Ardmore Field was commercially viable. Trust Company of the West and TCW Global Fund II were the initial purchasers and holders of the notes issued by Tuscan to finance exploration of the Ardmore Field.

On October 10, 2002, BAOL and Tuscan entered into an agreement entitled "Drilling and Production Jack-up Rig Contract" (the "rig contract"), under which BAOL agreed to operate a Gorilla VII drilling rig in connection with the production of the Ardmore Field. Tuscan agreed to pay a day rate for the rig calculated on the price of Brent Crude oil.

In early 2004, Tuscan began to experience cash flow problems caused by (1) certain technical difficulties with the drilling operations; and (2) rising Brent Crude oil prices, triggering increases in Tuscan's rig day rate. By late 2004, when Tuscan had not paid BAOL for several months of drilling and production, BAOL advised Tuscan that it would cease operations if Tuscan did not pay the arrears.

On November 23, 2004, BAOL and relators met in relators' Houston office. Relators agreed to lend Tuscan $15 million for continued operations in the Ardmore Field. This loan was contingent on an agreement by BAOL to reduce the day rate for the Gorilla VII drilling rig and extend past arrears under the original rig contract.

On December 22, 2004, Tuscan and BAOL entered into an amended rig contract.[1] The amended rig contract provided for a flat rig day rate of $120,000; a schedule for the payment of Tuscan's arrears to BAOL; and Tuscan's commitment to fund a "plug and abandonment" account. At that same time, Trust Company of the West and TCW Global Fund II invested an additional $15 million in the project.

On October 7, 2005, BAOL filed suit against relators for promissory estoppel, tortious interference, negligent misrepresentation, and fraud.[2] BAOL alleges that,

---

1. The amended rig contract is entitled, "Deed of Variation & Amendment."

2. On November 14, 2005, relators removed this case to federal court, which remanded it back to state court. On January 20, 2006,

beginning in January 2004, relators devised a strategy to sell the Ardmore Field project to another group of investors. BAOL asserts that the continued presence of the Gorilla VII drilling rig was critical to that effort. That is, with continued production, the project would remain attractive to investors; without the Gorilla VII drilling rig, Tuscan would not be able to produce any revenue and the Ardmore Field operation would collapse. BAOL contends that relators made numerous promises in an effort to keep the Gorilla VII drilling rig on location in the Ardmore Field.

On January 23, 2006, relators, although not signatories to the BAOL/Tuscan rig contracts, filed a motion to dismiss based on the forum-selection clause found in the rig contracts.[3] Relators argued that BAOL was estopped under Texas law from denying the application of the forum-selection clause because (1) BAOL's claims relate to, and presumed the existence of, the rig contracts; and (2) BAOL's suit is explicitly based on the notion that relators were critical transaction participants in the negotiation and performance of the rig contracts.

The parties agreed to conduct discovery related to the motion to dismiss and BAOL filed its response after the completion of discovery. On January 25, 2008, the trial court denied relators' motion to dismiss. Relators complain that the trial court abused its discretion by denying their motion to dismiss based on the forum-selection clause.

## MANDAMUS STANDARD OF REVIEW

 Mandamus relief is available to enforce forum-selection clauses. *In re Au-*

*toNation, Inc.,* 228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding). To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that (1) the trial court clearly abused its discretion, and (2) it has no adequate remedy on appeal. *In re Team Rocket, L.P.,* 256 S.W.3d 257, 259 (Tex.2008) (orig. proceeding).

## WAIVER

 When a party seeks to enforce a forum-selection clause, the trial court must determine whether the claims in question fall within the scope of that clause. *Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.,* 234 S.W.3d 679, 687–88 (Tex.App.-Houston [14th Dist.] 2007, pet. filed) (citing *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 221–22 (5th Cir.1998)). If the claims fall within the scope of the forum-selection clause, the court must decide whether to enforce the clause. *Id.* at 688. After resolving issues of scope and enforceability, a trial court may have to decide whether a nonsignatory can enforce a forum-selection clause. *Id.* at 687. Thus, the scope of the forum-selection clause is the threshold issue that must be decided before addressing whether the forum-selection clause is enforceable and whether relators are entitled to enforce the clause as nonsignatories.

BAOL contends that relators waived their right to challenge the trial court's denial of their motion to dismiss in this original proceeding. In response to relators' motion to dismiss, BAOL argued that its tort claims against relators did not fall within the narrow scope of the forum-

---

relators filed a special appearance, which they withdrew on March 31, 2006.

**3.** Relators filed a motion dismiss based on forum non conveniens. However, relators do not seek mandamus relief for the denial of that motion.

selection clause. However, relators did not raise the scope of the forum-selection clause in its petition filed in this court, but only addressed scope in its reply brief in response to BAOL's argument that relators had waived any argument regarding scope of the forum-selection clause. BAOL asserts that because relators have not challenged all potential bases for the order denying their motion to dismiss, they have waived their challenge to the trial court's order.

Relators contend that BAOL erroneously relies on rules applicable to summary judgment proceedings, not original proceedings. Relators rely on *In re International Bank of Commerce* in support of their position that summary judgment rules have no application here. No. 13–07–693–CV, 2008 WL 192260 (Tex.App.-Corpus Christi Jan. 18, 2008, orig. proceeding [mand. denied]) (mem.op.). In that case, the trial court refused to compel arbitration based on its determination that the bank had waived its right to arbitrate. *Id.* at *14. The bank challenged that finding in its petition for writ of mandamus, but failed to address the other defenses to arbitration that real parties in interest had raised in the trial court. *Id.* The issue in the mandamus proceeding was whether the bank was required to challenge the other potential grounds to defeat arbitration that were not expressly ruled on by the trial court. *Id.*

 The court of appeals observed that the parties had not cited to any opinion in an original proceeding in which summary judgment principles had been applied. *Id.* at *15. However, the court recited the

summary judgment rule that, when the court states the basis for its ruling, an appellant is required to attack only the stated ground for the ruling. *Id.* The court of appeals will usually decline to address the alternative grounds and, instead, remand the case to the trial court for consideration of the additional grounds. *Id.* However, when the parties raise the alternative grounds, the court of appeals, in the interest of judicial economy, may rule on those grounds presented to the trial court, but not expressly ruled on. *Id.* (citing *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996)).[4]

In the interest of judicial economy and at the "invitation" of the real parties in interest, the court of appeals decided to address the other defenses to arbitration, and declined to hold that the bank had waived its right to challenge the order denying the motion to compel arbitration because (1) the parties had briefed the issues in great detail in the trial court, (2) the other defenses had consumed most of the trial court's time and efforts at the hearing on the motion to compel arbitration, and (3) the bank had briefed the issue in its reply brief. *Id.* It is apparent that *In re International Bank of Commerce* relied, at least in part, on summary judgment rules and therefore does not offer support to relators' position that summary judgment rules are inapplicable to original proceedings.

*In re International Bank of Commerce* is distinguishable because here, the trial court did not specify any particular ground on which it relied in denying relators' motion to dismiss. *See Holloway v. Starnes,*

4. *See Cincinnati Life Ins.,* 927 S.W.2d at 625 ("[R]ule 166a does not prevent an appellate court from affirming the judgment on other grounds the parties properly raised before the trial court, when the trial court grants summary judgment specifically on fewer than all grounds asserted. Rather, our rules of appellate procedure give appellate courts the authority, when reviewing judgments of lower courts, to render the judgment or decree that the court below should have rendered.").

840 S.W.2d 14, 23 (Tex.App.-Dallas 1992, writ denied) (stating that if summary judgment may have been granted, properly or improperly, on a ground not challenged, it must be affirmed).

However, we need not decide whether it is appropriate to apply summary judgment rules to this original proceeding. *In re International Bank of Commerce* also relied on the bank's having addressed the other defenses in its reply after the real party in interest had pointed out the deficiency in the bank's petition. 2008 WL 192260, at *14–15. It is well-settled that Rule 38.3 of the Texas Rules of Appellate Procedure does not allow an appellant to include in a reply brief a new issue in response to a matter pointed out in the appellee's brief but not raised by the appellant's original brief. *Dallas County v. Gonzales,* 183 S.W.3d 94, 104 (Tex. App.– Dallas 2006, pet. denied); *Howell v. Tex. Workers' Comp. Comm'n,* 143 S.W.3d 416, 439 (Tex.App.-Austin 2004, pet. denied); *In re M.D.H.,* 139 S.W.3d 315, 318 (Tex. App.-Fort Worth 2004, pet. denied); *Barrios v. State,* 27 S.W.3d 313, 322 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd).

Rule 52.5 of the Texas Rules of Appellate Procedure, providing for reply briefs in original proceedings, states that "[t]he relator may file a reply addressing any matter in the response." Tex.R.App. P. 52.5. Rule 38.3 similarly provides that "[t]he appellant may file a reply brief addressing any matter in the appellee's brief." Tex.R.App. P. 38.3. Except for identifying the parties as "relator" and "appellant," Rules 52.5 and 38.3 are identical. Because Rule 38.3 does not permit an appellant to assert new grounds for reversal in a reply brief after the omitted grounds have been pointed out in a response, we see no reason to interpret Rule 52.5 to permit such a practice. Thus, we conclude that relators have waived the argument that the scope of the forum-selection clause is sufficiently broad to include BAOL's tort claims.

■ Relators further argue that their assertion that the trial court erred in denying their motion to dismiss encompasses every subsidiary question that is fairly included within that issue. *See* Tex.R.App. P. 52.3(f) ("The petition must state concisely all issues or points presented for relief. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."). *Id.* Nevertheless, the petition "must contain a clear and concise argument of the contentions made, with appropriate citations to authorities and to the appendix or record." Tex. R.App. P. 52.3(h). Relators failed to present any argument or authority in their petition in support of the position that BAOL's tort claims are included within the scope of the forum-selection clause. *See In re Lexington Ins. Co.,* No. 14–03–01236–CV, 2004 WL 210576, at *2 (Tex. App.-Houston [14th Dist.] Feb. 2, 2004, orig. proceeding [mand. denied]) (mem. op.) (holding relator waived issue by failing to provide argument or authority to support issue); *In re Neely,* No. 01–02–00355–CV, 2003 WL 164478, at *3 (Tex.App.-Houston [1st Dist.] Jan. 23, 2003, orig. proceeding) (mem.op.) (same). We hold that relators have waived any argument that the scope of the forum-selection clause is sufficiently broad to include BAOL's claims.

## CONCLUSION

Because relators have waived any challenge to the scope of the forum-selection clause, we do not address whether relators, as nonsignatories, are entitled to enforce the clause. Under these circumstances, relators have not shown that the trial court abused its discretion by denying their motion to dismiss and, therefore, are

not entitled to the extraordinary relief of a writ of mandamus.

Accordingly, we deny relators' petition for writ of mandamus.