# NO. 12-10-00030-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *COTTON PATCH CAFÉ, INC.,* *APPELLANT* | § | *APPEAL FROM THE 145TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *MICROS SYSTEMS, INC.* *AND SCOTT SHIPFERLING,* *APPELLEES* | § | *NACOGDOCHES COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Cotton Patch Café, Inc. appeals the trial court's order dismissing its suit against Micros Systems, Inc. and Scott Shipferling (collectively Appellees). In four issues, Cotton Patch argues that the trial court erred in dismissing its suit. We affirm.

### BACKGROUND

On May 31, 2001, Cotton Patch purchased a point-of-sale system from Micros Systems, Inc. (MSI) to process credit card transactions for its Nacogdoches restaurant. Shipferling was MSI's sales representative for this transaction, which was memorialized by a written contract. The contract stated, in pertinent part, as follows:

> This contract shall be governed by and construed according to the laws of the state of Maryland. The parties mutually consent to exclusive jurisdiction and venue in the state and federal courts sitting in the State of Maryland.

Thereafter, Cotton Patch and MSI entered into eight other "sales contracts." These contracts concerned hardware, software, programming, and support services for the point-of-sale system that was the subject of the first contract. These subsequent contracts contained the same

1

language set forth above. However, these contracts further stated that the parties consented to the exclusive jurisdiction and venue in the state and federal courts sitting in the State of Maryland "for all matters arising under or relating to this sales contract, whether based on contract, tort, or otherwise."

In 2004, Larry Marshall, president of Cotton Patch, became concerned about the security of the point-of-sale system purchased from MSI. According to Marshall, he contacted MSI about his concerns, but was told by a representative of MSI that there was nothing to worry about. In 2006, the Cotton Patch point-of-sale system was compromised, customer credit card numbers were stolen, and fraudulent charges were later made on certain Cotton Patch customers' card accounts.

On December 19, 2008, Cotton Patch filed suit in Nacogdoches County, Texas, against MSI and Shipferling alleging that it suffered severe damage as a result of the lack of security in its point-of-sale system. By its suit, Cotton Patch sought to recover for (1) violation of the Texas Deceptive Trade Practices Act (DTPA), (2) negligence, (3) gross negligence, and (4) negligent misrepresentation.

Subsequently, MSI filed a motion to dismiss Cotton Patch's suit based upon the forum selection clauses of the parties' several contracts. Cotton Patch responded that MSI and Shipferling committed torts against it and that its causes of action were unrelated to the contracts that were the subject of MSI's motion to dismiss. The trial court dismissed Cotton Patch's suit based upon the contracts' forum selection clauses. This appeal followed.

## MOTION TO DISMISS PURSUANT TO FORUM SELECTION CLAUSE

In its first issue, Cotton Patch contends that the trial court abused its discretion in granting Appellees' motion to dismiss. In its second issue, Cotton Patch contends that its causes of action against MSI were tortious in nature and were unrelated to the contracts between it and MSI. We consider these two issues together.

A motion to dismiss is the proper procedural mechanism for enforcing a forum selection clause that a party to the agreement has violated in filing suit. *Phoenix Network Techs. v. Neon Sys.*, 177 S.W.3d 605, 610 (Tex. App.–Houston [1st Dist.] 2005, no pet.). The Texas Supreme Court has held that a "forum [selection] clause should control absent a strong showing that it should be set aside." *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004) (orig. proceeding)

(citing *The Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 1913, 32 L. Ed. 2d 513 (1972)). A trial court abuses its discretion if it refuses to enforce the forum selection clause unless the party opposing enforcement of the clause can show clearly that (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *See In re Int'l Profit Assoc., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009) (orig. proceeding). The burden of proof is heavy for the party challenging enforcement. *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding).

When a party seeks to enforce a forum selection clause, the trial court must first determine whether the claims raised in the lawsuit fall within the scope of that clause. *See In re TCW Global Project Fund II, Ltd.*, 274 S.W.3d 166, 169 (Tex. App.–Houston [14th Dist.] 2008, orig. proceeding [mand. denied]). If the claims fall within the scope of the forum selection clause, the court then must decide whether the clause is enforceable. *See id.*

A claim is brought in contract if liability arises from the contract. *See In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (orig. proceeding). A claim is brought in tort if liability is derived from other general obligations imposed by law. *Id.* We are not to follow slavish adherence to a contract/tort distinction; to hold to the contrary would allow a litigant to avoid a forum selection clause with artful pleading. *See In re Int'l Profit Assoc.*, 274 S.W.3d at 677 (citing *Ginter ex rel. Bullard v. Belcher, Prendergast & LaPorte*, 536 F.3d 439, 444 (5th Cir. 2008)). Rather, we must determine the issue after undertaking a common sense examination of the substance of the claims made. *See In re Int'l Profit Assoc.*, 274 S.W.3d at 677. Pleading alternative noncontractual theories of recovery will not alone avoid a forum selection clause if those alternate claims arise out of the contractual relations and implicate the contract's terms. *Christian Educ. v. Oracle Corp.*, 925 S.W.2d 66, 72 (Tex. App.–Dallas 1996, no pet.).

In the case at hand, Cotton Patch pleaded causes of action for violations of the DTPA, negligence, gross negligence, and negligent misrepresentation. Each of these claims arises out of the parties' contractual relations regarding the point-of-sale system and necessarily implicates the contract's terms. Without the contractual relations, which had already been established between Cotton Patch and MSI, the acts giving rise to the causes of action sounding in tort would

3

not have occurred. Thus, based on our review of the record, we conclude that Cotton Patch's claims arise out of the parties' contract rather than other general obligations imposed by law. *See **In re Lisa Laser USA, Inc.***, 310 S.W.3d 880, 886 (Tex. 2010) (orig. proceeding).

Cotton Patch also contends that Maryland would be inconvenient as a forum for trial. The affidavits filed in support of its response to Appellees' motion to dismiss state that "[a]ll known witnesses in this case reside and/or took the actions for which they will testify in Texas and it would be severely detrimental to the maintenance of Cotton Patch's claims to have to bring this case in Maryland, which has no relationship to the dispute." But by entering into an agreement that includes a forum selection clause, the parties effectively represent to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for cost or other reasons. ***In re Lyon Fin. Serv., Inc.***, 257 S.W.3d 228, 234 (Tex. 2008) (orig. proceeding). Absent proof of special and unusual circumstances, which, based on our review of the record, were not demonstrated, trial in another state is not sufficiently difficult and inconvenient to avoid enforcement of an otherwise valid forum selection clause. *See **id.*** Because Cotton Patch has failed to meet its heavy burden to show Maryland would be a seriously inconvenient forum for trial, we hold that the trial court did not abuse its discretion in granting Appellees' motion to dismiss.

Cotton Patch's first and second issues are overruled.

## STATUTORY PROVISIONS ON FORUM SELECTION

In its third issue, Cotton Patch contends that the forum selection clauses in its contracts with MSI were voidable according to Chapter 273 of the Texas Business and Commerce Code. Chapter 273 requires forum selection clauses in certain types of agreements to be set forth conspicuously. *See* TEX. BUS. & COM. CODE ANN. § 273.002 (Vernon 2009). Section 273.001, which sets forth what types of contracts are subject to this requirement, states, in pertinent part, as follows:

This chapter applies to a contract only if:

(1) the contract is for the sale, lease, exchange, or other disposition for value of goods for the price, rental, or other consideration of $50,000 or less;

(2) any element of the contract's execution occurred in this state;

4

(3) a party to the contract is:

    (A) an individual resident of this state; or

    (B) an association or corporation that is created under the laws of this state or has its principal place of business in this state; and

    (4) Section 1.301 does not apply to the contract.

TEX. BUS. & COM. CODE ANN. § 273.001 (Vernon 2009).

MSI responds that Section 273.001(a)(4) specifically excepts a contract under Section 1.301(a) of the Texas Business and Commerce Code. Section 1.301(a) states as follows:

> Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation[,] the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this title applies to transactions bearing an appropriate relation to this state.

TEX. BUS. & COM. CODE ANN. § 1.301(a) (Vernon 2009). We must, therefore, determine which of these two provisions of the Texas Business and Commerce Code control the forum selection clauses in the case at hand.

The fundamental rule governing the construction of a statute is to ascertain the intent of the legislature in enacting the statute. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 561 (Tex. App.–Tyler 2007, pet. denied). We must construe statutes as written and, if possible, ascertain legislative intent from the statute's language. *Id.* at 562. When a statute is clear and unambiguous, courts need not resort to rules of construction or extrinsic aids to construe it, but should give the statute its common meaning. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We construe the statute's words according to their plain and common meaning. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008).

A trial court's determination of choice of law is a question of law and is reviewed de novo. *Cudd Pressure Control v. Sonat Exploration*, 202 S.W.3d 901, 904 (Tex. App.–Texarkana 2006), *aff'd*, 271 S.W.3d 228 (Tex. 2008). The underlying principle is to protect the parties' expectations. *Id.* at 904. In that regard, the courts have repeatedly recognized that the contracting parties frequently express their choice of law for the construction and interpretation of their agreement. *Id.* The Texas Supreme Court has stated that judicial respect for the contracting parties' choice of law advances the policy of protecting the parties' expectations. *Id.*

5

The parties' contractual choice of law will be given effect if the contract bears a reasonable relationship to the chosen state and no countervailing public policy of the forum demands otherwise. *Sava Gumarska Kemijska Indus. D.T. v. Advanced Polymer Sci., Inc.*, 128 S.W.3d 304, 314 (Tex. App.–Dallas 2004, no pet.). The state in which a company has its principal place of business has a reasonable relationship to the parties and the transaction. *My Café CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 865 (Tex. App.–Dallas 2003, no pet.).

Section 273.001 specifically states that it does not apply to the contract if Section 1.301 applies. Pursuant to Section 1.301, the policy of the state of Texas is to allow parties to contract for the choice of law they want to govern a contract insomuch as the transaction bears a reasonable relation to the chosen state. *See* TEX. BUS. & COM. CODE ANN. § 1.301(a). Here, MSI is a Maryland corporation. Moreover, in each of the nine contracts at issue, the parties agreed that the law of Maryland would govern any disputes between them and that the courts in Maryland would be the forum for any litigation. We conclude that the parties' transaction bears a reasonable relation to the state of Maryland. Accordingly, we hold that the choice of law and forum selection designated in the contracts between Cotton Patch and MSI should be upheld pursuant to Section 1.301(a) of the Texas Business and Commerce Code. Cotton Patch's third issue is overruled.

### AFFIDAVIT SUPPORTING MOTION TO DISMISS

In its fourth issue, Cotton Patch contends that the trial court erred by considering the affidavit of Ryan Ritter, the general manager of MSI's Dallas district office, in support of MSI's motion to dismiss. Specifically, Cotton Patch contends that Ritter's affidavit was conclusory and, therefore, was not evidence the trial court could consider in determining MSI's motion to dismiss.

Affidavits are to be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. *See Southtex 66 Pipeline Co. v. Spoor*, 238 S.W.3d 538, 542 (Tex. App.–Houston [14th Dist.] 2007, pet. denied). Affidavits must set forth the facts and show affirmatively how the affiant obtained personal knowledge of these facts. *First Nat'l Bank in Munday v. Lubbock Feeders*, 183 S.W.3d 875, 871 (Tex. App.–Eastland 2006, pet. denied). A person's position or job responsibilities can qualify him to have personal knowledge of facts and

6

establish how he learned of the facts. *See Southtex 66 Pipeline Co.*, 238 S.W.3d at 543. A conclusory statement is one that does not provide the underlying facts to support the conclusion. ***Perrigon Gen. Contractors v. Larco Constr.***, 227 S.W.3d 876, 883 (Tex. App.–Dallas 2007, no pet.). An affidavit containing conclusory and subjective determinations of fact may support a motion to dismiss if the remaining statements contain sufficient factual information to sustain the movant's burden of proof. *See First Nat'l Bank in Munday*, 183 S.W.3d at 881.

In the instant case, our review of Ritter's affidavit indicates that it was based upon personal knowledge Ritter obtained from interviewing Scott Shipferling and other MSI employees who had dealt with the Cotton Patch location in question as well as from his review of MSI's files and records. MSI's motion to dismiss was based on its contention that the parties had contractually agreed that Maryland law would control any disputes between them and that Maryland courts would serve as the forum for determining the outcome of any of these legal disputes. At a minimum, MSI's motion to dismiss was properly supported by valid copies of the nine contracts containing these choice of law and forum selection clauses. Ritter, as general manager of MSI's Dallas district office, was qualified to introduce these contracts into evidence, which he did through his affidavit. Thus, we conclude that the trial court properly considered Ritter's affidavit, through which these nine contracts were introduced, in ruling on MSI's motion to dismiss. Cotton Patch's fourth issue is overruled.

<u>**DISPOSITION**</u>

Having overruled Cotton Patch's first, second, third, and fourth issues, we ***affirm*** the trial court's judgment.

<u>**JAMES T. WORTHEN**</u>
Chief Justice

Opinion delivered March 2, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)