NO. 12-10-00030-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

COTTON PATCH CAFÉ, INC.,                  §          APPEAL
FROM THE 145TH

APPELLANT

                                                                        

V.                                                                    §          JUDICIAL
DISTRICT COURT 

 

MICROS SYSTEMS, INC.

AND SCOTT SHIPFERLING,

APPELLEES                                                 §          NACOGDOCHES
COUNTY, TEXAS







MEMORANDUM
OPINION

          Cotton
Patch Café, Inc. appeals the trial court’s order dismissing its suit against
Micros Systems, Inc. and Scott Shipferling (collectively Appellees).  In four
issues, Cotton Patch argues that the trial court erred in dismissing its suit. 
We affirm.

 

Background

            On
May 31, 2001, Cotton Patch purchased a point-of-sale system from Micros Systems,
Inc. (MSI) to process credit card transactions for its Nacogdoches restaurant. 
Shipferling was MSI’s sales representative for this transaction, which was
memorialized by a written contract.  The contract stated, in pertinent part, as
follows:

 

This contract shall be governed by and construed
according to the laws of the state of Maryland.  The parties mutually consent
to exclusive jurisdiction and venue in the state and federal courts sitting in
the State of Maryland.

 

 

            Thereafter,
Cotton Patch and MSI entered into eight other “sales contracts.”  These
contracts concerned hardware, software, programming, and support services for
the point-of-sale system that was the subject of the first contract.  These subsequent
contracts contained the same language set forth above.  However, these
contracts further stated that the parties consented to the exclusive
jurisdiction and venue in the state and federal courts sitting in the State of
Maryland “for all matters arising under or relating to this sales contract,
whether based on contract, tort, or otherwise.”

            In
2004, Larry Marshall, president of Cotton Patch, became concerned about the
security of the point-of-sale system purchased from MSI.  According to
Marshall, he contacted MSI about his concerns, but was told by a representative
of MSI that there was nothing to worry about.  In 2006, the Cotton Patch
point-of-sale system was compromised, customer credit card numbers were stolen,
and fraudulent charges were later made on certain Cotton Patch customers’ card
accounts.  

On
December 19, 2008, Cotton Patch filed suit in Nacogdoches County, Texas, against
MSI and Shipferling alleging that it suffered severe damage as a result of the
lack of security in its point-of-sale system.  By its suit, Cotton Patch sought
to recover for (1) violation of the Texas Deceptive Trade Practices Act (DTPA),
(2) negligence, (3) gross negligence, and (4) negligent misrepresentation.

            Subsequently,
MSI filed a motion to dismiss Cotton Patch’s suit based upon the forum
selection clauses of the parties’ several contracts.  Cotton Patch responded that
MSI and Shipferling committed torts against it and that its causes of action
were unrelated to the contracts that were the subject of MSI’s motion to
dismiss.  The trial court dismissed Cotton Patch’s suit based upon the contracts’
forum selection clauses.  This appeal followed.

 

Motion to Dismiss Pursuant to Forum Selection
Clause

            In
its first issue, Cotton Patch contends that the trial court abused its
discretion in granting Appellees’ motion to dismiss.  In its second issue, Cotton
Patch contends that its causes of action against MSI were tortious in nature
and were unrelated to the contracts between it and MSI.  We consider these two
issues together.

            A
motion to dismiss is the proper procedural mechanism for enforcing a forum
selection clause that a party to the agreement has violated in filing suit.  Phoenix
Network Techs. v. Neon Sys., 177 S.W.3d 605, 610 (Tex. App.–Houston [1st
Dist.] 2005, no pet.).  The Texas Supreme Court has held that a “forum [selection]
clause should control absent a strong showing that it should be set aside.”  In
re AIU Ins. Co., 148 S.W.3d 109, 112 (Tex. 2004) (orig. proceeding) (citing
The Bremen v. Zapata Offshore Co., 407 U.S. 1, 92 S. Ct. 1907, 1913,
32 L. Ed. 2d 513 (1972)).  A trial court abuses its discretion if it refuses to
enforce the forum selection clause unless the party opposing enforcement of the
clause can show clearly that (1) enforcement would be unreasonable or unjust,
(2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement
would contravene a strong public policy of the forum where the suit was
brought, or (4) the selected forum would be seriously inconvenient for trial.  See
In re Int’l Profit Assoc., Inc., 286 S.W.3d 921, 923 (Tex. 2009)
(orig. proceeding).  The burden of proof is heavy for the party challenging
enforcement.  In re Laibe Corp., 307 S.W.3d 314, 316 (Tex. 2010)
(orig. proceeding).  

            When
a party seeks to enforce a forum selection clause, the trial court must first determine
whether the claims raised in the lawsuit fall within the scope of that clause. 
See In re TCW Global Project Fund II, Ltd., 274 S.W.3d 166,
169 (Tex. App.–Houston [14th Dist.] 2008, orig. proceeding [mand. denied]).  If
the claims fall within the scope of the forum selection clause, the court then must
decide whether the clause is enforceable.  See id.  

            A
claim is brought in contract if liability arises from the contract.  See
In re Kaplan Higher Educ. Corp., 235 S.W.3d 206, 209 (Tex. 2007)
(orig. proceeding).  A claim is brought in tort if liability is derived from
other general obligations imposed by law.  Id.  We are not to
follow slavish adherence to a contract/tort distinction; to hold to the
contrary would allow a litigant to avoid a forum selection clause with artful
pleading.  See In re Int’l Profit Assoc., 274 S.W.3d at
677 (citing Ginter ex rel. Bullard v. Belcher, Prendergast & LaPorte,
536 F.3d 439, 444 (5th Cir. 2008)).  Rather, we must determine the issue after
undertaking a common sense examination of the substance of the claims made.  See
In re Int’l Profit Assoc., 274 S.W.3d at 677.  Pleading
alternative noncontractual theories of recovery will not alone avoid a forum
selection clause if those alternate claims arise out of the contractual
relations and implicate the contract’s terms.  Christian Educ. v. Oracle
Corp., 925 S.W.2d 66, 72 (Tex. App.–Dallas 1996, no pet.).

            In
the case at hand, Cotton Patch pleaded causes of action for violations of the
DTPA, negligence, gross negligence, and negligent misrepresentation.  Each of
these claims arises out of the parties’ contractual relations regarding the
point-of-sale system and necessarily implicates the contract’s terms.  Without
the contractual relations, which had already been established between Cotton
Patch and MSI, the acts giving rise to the causes of action sounding in tort would
not have occurred.  Thus, based on our review of the record, we conclude that Cotton
Patch’s claims arise out of the parties’ contract rather than other general
obligations imposed by law.  See In re Lisa Laser USA, Inc., 310
S.W.3d 880, 886 (Tex. 2010) (orig. proceeding).

            Cotton
Patch also contends that Maryland would be inconvenient as a forum for trial. 
The affidavits filed in support of its response to Appellees’ motion to dismiss
state that “[a]ll known witnesses in this case reside and/or took the actions
for which they will testify in Texas and it would be severely detrimental to
the maintenance of Cotton Patch’s claims to have to bring this case in
Maryland, which has no relationship to the dispute.”  But by entering into an
agreement that includes a forum selection clause, the parties effectively
represent to each other that the agreed forum is not so inconvenient that
enforcing the clause will deprive either party of its day in court, whether for
cost or other reasons.  In re Lyon Fin. Serv., Inc., 257 S.W.3d
228, 234 (Tex. 2008) (orig. proceeding).  Absent proof of special and unusual
circumstances, which, based on our review of the record, were not demonstrated,
trial in another state is not sufficiently difficult and inconvenient to avoid
enforcement of an otherwise valid forum selection clause.  See id. 
Because Cotton Patch has failed to meet its heavy burden to show Maryland would
be a seriously inconvenient forum for trial, we hold that the trial court did
not abuse its discretion in granting Appellees’ motion to dismiss.  

Cotton
Patch’s first and second issues are overruled.

 

Statutory Provisions on Forum Selection

            In
its third issue, Cotton Patch contends that the forum selection clauses in its
contracts with MSI were voidable according to Chapter 273 of the Texas Business
and Commerce Code.  Chapter 273 requires forum selection clauses in certain
types of agreements to be set forth conspicuously.  See Tex. Bus. & Com. Code Ann. §
273.002 (Vernon 2009).  Section 273.001, which sets forth what types of
contracts are subject to this requirement, states, in pertinent part, as
follows:

 

This chapter applies to a contract only if:

 

  (1) the contract is for the sale, lease, exchange,
or other disposition for value of goods for the price, rental, or other
consideration of $50,000 or less;

 

  (2) any element of the contract’s execution occurred
in this state;

 

  (3) a party to the contract is:

 

      (A) an individual resident of this state; or

 

      (B) an association or corporation that is
created under the laws of this state or has its principal place of business in
this state; and

 

  (4) Section 1.301 does not apply to the contract.


Tex. Bus. & Com. Code Ann. § 273.001 (Vernon 2009).

            MSI responds
that Section 273.001(a)(4) specifically excepts a contract under Section 1.301(a)
of the Texas Business and Commerce Code.  Section 1.301(a) states as follows:

 

Except as provided hereafter in this section, when a
transaction bears a reasonable relation to this state and also to another state
or nation[,] the parties may agree that the law either of this state or of such
other state or nation shall govern their rights and duties.  Failing such
agreement this title applies to transactions bearing an appropriate relation to
this state.

 

Tex. Bus. & Com. Code Ann. § 1.301(a)
(Vernon 2009).  We must, therefore, determine which of these two provisions of
the Texas Business and Commerce Code control the forum selection clauses in the
case at hand.

            The
fundamental rule governing the construction of a statute is to ascertain the
intent of the legislature in enacting the statute.  Canal Ins. Co. v.
Hopkins, 238 S.W.3d 549, 561 (Tex. App.–Tyler 2007, pet. denied).  We
must construe statutes as written and, if possible, ascertain legislative intent
from the statute’s language.  Id. at 562.  When a statute is
clear and unambiguous, courts need not resort to rules of construction or
extrinsic aids to construe it, but should give the statute its common meaning. 
St. Luke’s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex.
1997).  We construe the statute’s words according to their plain and common
meaning.  City of Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex.
2008).

            A
trial court’s determination of choice of law is a question of law and is
reviewed de novo.  Cudd Pressure Control v. Sonat Exploration,
202 S.W.3d 901, 904 (Tex. App.–Texarkana 2006), aff’d, 271 S.W.3d 228
(Tex. 2008).  The underlying principle is to protect the parties’ expectations.
Id. at 904.  In that regard, the courts have repeatedly
recognized that the contracting parties frequently express their choice of law
for the construction and interpretation of their agreement.  Id.  The
Texas Supreme Court has stated that judicial respect for the contracting
parties’ choice of law advances the policy of protecting the parties’
expectations.  Id.  

The
parties’ contractual choice of law will be given effect if the contract bears a
reasonable relationship to the chosen state and no countervailing public policy
of the forum demands otherwise.  Sava Gumarska Kemijska Indus. D.T. v.
Advanced Polymer Sci., Inc., 128 S.W.3d 304, 314 (Tex. App.–Dallas
2004, no pet.).  The state in which a company has its principal place of
business has a reasonable relationship to the parties and the transaction.  My
Café CCC, Ltd. v. Lunchstop, Inc., 107 S.W.3d 860, 865 (Tex.
App.–Dallas 2003, no pet.). 

            Section
273.001 specifically states that it does not apply to the contract if Section
1.301 applies.  Pursuant to Section 1.301, the policy of the state of Texas is
to allow parties to contract for the choice of law they want to govern a
contract insomuch as the transaction bears a reasonable relation to the chosen
state.  See Tex.
Bus. & Com. Code Ann. § 1.301(a).  Here, MSI is a Maryland
corporation.  Moreover, in each of the nine contracts at issue, the parties
agreed that the law of Maryland would govern any disputes between them and that
the courts in Maryland would be the forum for any litigation.  We conclude that
the parties’ transaction bears a reasonable relation to the state of Maryland. 
Accordingly, we hold that the choice of law and forum selection designated in
the contracts between Cotton Patch and MSI should be upheld pursuant to Section
1.301(a) of the Texas Business and Commerce Code.  Cotton Patch’s third issue
is overruled.

 

Affidavit Supporting Motion to Dismiss

            In
its fourth issue, Cotton Patch contends that the trial court erred by
considering the affidavit of Ryan Ritter, the general manager of MSI’s Dallas
district office, in support of MSI’s motion to dismiss.  Specifically, Cotton
Patch contends that Ritter’s affidavit was conclusory and, therefore, was not
evidence the trial court could consider in determining MSI’s motion to dismiss.

            Affidavits
are to be made on personal knowledge, shall set forth such facts as would be
admissible in evidence, and shall show affirmatively that the affiant is
competent to testify to the matters stated therein.  See Southtex
66 Pipeline Co. v. Spoor, 238 S.W.3d 538, 542 (Tex. App.–Houston [14th
Dist.] 2007, pet. denied).  Affidavits must set forth the facts and show
affirmatively how the affiant obtained personal knowledge of these facts.  First
Nat’l Bank in Munday v. Lubbock Feeders, 183 S.W.3d 875, 871 (Tex.
App.–Eastland 2006, pet. denied).  A person’s position or job responsibilities
can qualify him to have personal knowledge of facts and establish how he
learned of the facts.  See Southtex 66 Pipeline Co., 238
S.W.3d at 543.  A conclusory statement is one that does not provide the
underlying facts to support the conclusion.  Perrigon Gen. Contractors v.
Larco Constr., 227 S.W.3d 876, 883 (Tex. App.–Dallas 2007, no pet.). 
An affidavit containing conclusory and subjective determinations of fact may
support a motion to dismiss if the remaining statements contain sufficient
factual information to sustain the movant’s burden of proof.  See First
Nat’l Bank in Munday, 183 S.W.3d at 881.

            In
the instant case, our review of Ritter’s affidavit indicates that it was based
upon personal knowledge Ritter obtained from interviewing Scott Shipferling and
other MSI employees who had dealt with the Cotton Patch location in question as
well as from his review of MSI’s files and records.  MSI’s motion to dismiss
was based on its contention that the parties had contractually agreed that Maryland
law would control any disputes between them and that Maryland courts would
serve as the forum for determining the outcome of any of these legal disputes. 
At a minimum, MSI’s motion to dismiss was properly supported by valid copies of
the nine contracts containing these choice of law and forum selection clauses. 
Ritter, as general manager of MSI’s Dallas district office, was qualified to
introduce these contracts into evidence, which he did through his affidavit.  Thus,
we conclude that the trial court properly considered Ritter’s affidavit,
through which these nine contracts were introduced, in ruling on MSI’s motion
to dismiss.  Cotton Patch’s fourth issue is overruled.

 

Disposition

            Having
overruled Cotton Patch’s first, second, third, and fourth issues, we affirm
the trial court’s judgment.

James T.
Worthen

                                                                              
                          Chief Justice

 

 

Opinion delivered March 2, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

(PUBLISH)