NO. 07-11-00494-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

FEBRUARY 17, 2012

IN RE RUBY TEQUILA'S AMARILLO WEST, LLC, RUBY
TEQUILA'S LUBBOCK SOUTH, LLC AND RUBY
TEQUILA'S MEXICAN KITCHEN, LLC, RELATORS

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**ON PETITION FOR WRIT OF MANDAMUS**

This original proceeding concerns enforcement of forum-selection clauses contained in three documents. Relators Ruby Tequila's Amarillo West, LLC, Ruby Tequila's Lubbock South, LLC, and Ruby Tequila's Mexican Kitchen, LLC,[1] (collectively, "Ruby Tequila's") seek a writ of mandamus compelling respondent, the Honorable Ana Estavez, judge of the 251st District Court, to vacate an order denying their motion to dismiss a suit brought by real parties in interest RT Soncy Partnership, Ltd. and RT Lubbock Partnership, Ltd.[2] We will deny Ruby Tequila's petition.

---

[1] According to their petition, Ruby Tequila's Amarillo West, LLC ("Amarillo West"), and Ruby Tequila's Lubbock South, LLC ("Lubbock South"), are subsidiaries of Ruby Tequila's Mexican Kitchen, LLC ("RTMK").

[2] We will refer to real parties in interest individually as Soncy Partnership and Lubbock Partnership.

Background[3]

Relators Amarillo West and Lubbock South operate restaurants in premises leased in Amarillo from Soncy Partnership and in Lubbock from Lubbock Partnership. The leases are dated February 8, 2008, and do not contain forum-selection clauses. In July 2009 RTMK became a guarantor of the obligations of the lessees Amarillo West and Lubbock South under the leases.

On November 9, 2010, Ruby Tequila's, Soncy Partnership and Lubbock Partnership (in other words, all of the relators and real parties in interest in this mandamus proceeding), together with other individuals and entities not parties to the litigation, executed documents that altered the previous business relationships among the parties. By one of the documents, entitled Separation, Settlement and Release Agreement, (the "Release"),[4] Soncy Partnership and Lubbock Partnership released certain claims against other parties, including Ruby Tequila's.

The Release contains a forum-selection clause by which litigation "asserting a breach of the Release" is to be brought in Delaware or in Texas, depending on which side is alleged to have committed the breach. Paraphrased with the names of the parties to this litigation, the clause reads, in relevant part:

> [A]ny litigation asserting a breach of [the Release] brought by [Soncy Partnership or Lubbock Partnership] shall be brought in a court presiding

---

[3] The documents and transactions relators discuss in their petition for mandamus are complex. The parties are familiar with them, and in this memorandum opinion we mention only those facts necessary to an understanding of our decision.

[4] In this opinion we adopt the shorthand designations for the documents used by the parties.

in the State of Delaware, and any litigation asserting a breach of [the Release] . . . brought by [Ruby Tequila's] shall be brought in a court presiding in the State of Texas.

Exhibit A to the Release is a document dated as of September 24, 2010, entitled Second Amended and Restated Limited Liability Company Agreement of Ruby Tequila's Mexican Kitchen, LLC (the "Operating Agreement").[5] It also contains a forum-selection clause, providing in relevant part:

> Any action, suit or proceeding in connection with [the Operating Agreement] must be brought against any Member or the Company in a court of record of the State of Delaware, County of New Castle, or of the United States District Court for the District of Delaware or in any state or federal court in the State of Delaware, each Member and the Company hereby consenting and submitting to the exclusive jurisdiction thereof[.]

On February 11, 2011, the parties executed a document entitled Amendment No.1 to Separation, Settlement and Release Agreement, (the "Amendment"). The Amendment contains a forum-selection clause like that in the Release.

On September 29, 2011, Soncy Partnership and Lubbock Partnership sued Amarillo West, Lubbock South, and RTMK in the 251st District Court of Randall County. The plaintiffs sought declaratory relief or damages for alleged breaches of the leases by Amarillo West and Lubbock South and damages from RTMK as guarantor of the leases. The plaintiffs' pleadings alleged the lessees had breached the leases by failing to keep the premises in good repair and failing to comply with local food establishment rules.

---

[5] The Operating Agreement identifies Soncy Partnership and Lubbock Partnership as "investor members" of RTMK. According to RTMK, Soncy Partnership and Lubbock Partnership are controlled by an individual who until 2010 served as chief executive of RTMK.

3

Ruby Tequila's answered by general denial and asserted affirmative defenses including release, failure of condition precedent, waiver, and violation of the forum-selection clause contained in the Release and the Amendment.[6]

Additionally, Ruby Tequila's filed a motion to dismiss the underlying suit based on the forum-selection clauses in the Release and the Amendment.[7] A supplemental motion added as a basis for dismissal the forum-selection clause in the Operating Agreement, asserting the underlying suit "amounts to merely a lawsuit by certain of Ruby Tequila's equity holders against [RTMK] and its affiliates."

At the hearing on the motion to dismiss, the trial court admitted certain documents into evidence and excluded others but it did not receive testimony. It denied the motion and Ruby Tequila's brought this mandamus proceeding.

Analysis

Ruby Tequila's asserts the trial court abused its discretion in denying its motion to dismiss because the causes of action Soncy Partnership and Lubbock Partnership assert in the underlying suit are within the scope of the forum-selection clause of the Release, the Amendment, and the Operating Agreement, and Soncy Partnership and

---

[6] Ruby Tequila's also requested an award of attorney's fees according to Civil Practice and Remedies Code § 37.009 "subject to dismissal of this action for *forum non conveniens*." (Italics in original). *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008).

[7] In a footnote to the motion concerning the Release and the Amendment, Ruby Tequila's explained "the Forum Selection Provisions were highly negotiated. Pursuant to these negotiations, Ruby Tequila's, a Delaware entity, conceded that if it had cause to bring a legal action against [Soncy Partnership or Lubbock Partnership], such action would be brought in Texas."

4

Lubbock Partnership failed to meet the burden of proof required of a party seeking to resist enforcement of a forum-selection clause.

A motion to dismiss is the proper procedural means of enforcing a forum-selection clause. *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys.,* 177 S.W.3d 605, 610 (Tex.App.--Houston [1st Dist.] 2005, no pet.). A writ of mandamus will issue if the trial court committed a clear abuse of discretion for which the relator has no adequate remedy at law. *In re Laibe Corp.,* 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam). When a trial court denies enforcement of a forum-selection clause the aggrieved party lacks an adequate remedy by appeal. *In re AutoNation, Inc.,* 228 S.W.3d 663, 667-68 (Tex. 2007) (orig. proceeding) ("forum-selection clauses--like arbitration agreements, another type of forum-selection clause--can be enforced through mandamus" (internal quotation marks omitted)). And a trial court clearly abuses its discretion when it improperly refuses to enforce a forum-selection clause. *In re Laibe Corp.,* 307 S.W.3d at 316.

When a party seeks to enforce a forum-selection clause, the trial court must first determine whether the claims asserted in the lawsuit fall within the scope of the clause. *See In re TCW Global Project Fund II, Ltd.,* 274 S.W.3d 166, 169 (Tex.App.--Houston [14th Dist.] 2008, orig. proceeding). If the claims fall within the scope of the forum-selection clause, the court then must decide whether the clause is enforceable. *Id.* We apply a common-sense examination of the underlying claim and the forum-selection clause to determine if the claim comes within the scope of the clause. *In re Lisa Laser USA, Inc.,* 310 S.W.3d 880, 884 (Tex. 2010) (orig. proceeding) (per curiam).

5

If the court is satisfied with this threshold showing, the party resisting enforcement of the forum-selection clause then assumes the heavy burden of clearly demonstrating: (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *In re Lyon Fin. Servs.,* 257 S.W.3d 228, 231-232 (Tex. 2008) (orig. proceeding) (per curiam). Contractual forum-selection clauses are prima facie valid. *West Tex. Hospitality, Inc., v. Enercon Int'l, Inc.,* No. 07-09-0213-CV, 2010 Tex. App. Lexis 7178, at *12 (Tex.App.--Amarillo Aug. 31, 2010, no pet.) (mem. op.) (citing *Phoenix Network,* 177 S.W.3d at 611).

The Operating Agreement's Forum-Selection Clause

Ruby Tequila's contends the claims alleged by Soncy Partnership and Lubbock Partnership in the underlying suit relate to their equity positions in RTMK and therefore fall within the Operating Agreement's forum-selection clause. As noted, the clause provides in part, "Any action, suit or proceeding in connection with" the Operating Agreement must be brought in a specified Delaware court.

The merits of this position depend on the facts alleged in the underlying suit. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding) ("To determine whether a party's claims fall within an arbitration agreement's scope, we focus on the complaint's factual allegations rather than the legal causes of action

6

asserted").[8]  As noted, the underlying pleadings allege that the lessees have failed to keep leased premises in good repair and to comply with local laws regulating restaurants, and allege the guarantor has failed to comply with its guarantee of the lessee's lease obligations.  Nothing in this record indicates the efficacy of the leases and guarantee, or the legal relationships they create, are dependent on the Operating Agreement.  Nor does the underlying suit, as plead, implicate or otherwise bear a cognizable relationship to any of the rights and obligations created by the Operating Agreement.  And the claims alleged in the underlying suit do not depend on the existence of the Operating Agreement but may be independently asserted without reference to that agreement.  *Compare Parfi Holding AB v. Mirror Image Internet, Inc.,* 817 A.2d 149, 156 n.24, 151-52, 156-57 (Del. 2002) (noting "[g]enerally, purportedly independent actions do not touch matters implicated in a contract if the independent cause of action could be brought had the parties not signed a contract," and holding claims of breach of fiduciary duty were not "in connection with" rights and obligations of the underlying agreement's arbitration clause providing "any dispute, controversy or claim arising out of or in connection with this Agreement . . . shall be settled by arbitration"); *Ford v. Nylcare Health Plans,* 141 F.3d 243, 250-251 (5th Cir.1998) (noting under Texas law of arbitration agreements "courts look at the facts giving rise to the action and to whether the action *could be* maintained without reference to the contract" (emphasis in original, quotation marks omitted)); *and Hearthshire Braeswood Plaza Ltd.*

---

[8] Our supreme court has classified an arbitration agreement as "another type of forum-selection clause" and has found no meaningful distinction between a litigation forum-selection clause and an arbitration clause.  *See In re AIU Ins. Co.,* 148 S.W.3d 109, 115-16 (Tex. 2004) (orig. proceeding).

*P'ship v. Bill Kelly Co.,* 849 S.W.2d 380, 391 (Tex.App.--Houston [14th Dist.] 1993, writ denied) (arbitrability of tort requires determination whether claim is so interwoven with contract containing arbitration clause that tort cannot stand alone, or is completely independent of contract and can be maintained without reference to contract), *with Lisa Laser,* 310 S.W.3d at 886 (finding claims of party bringing underlying suit arose from distribution agreement in dispute rather than other general obligations imposed by law (citing *In re Int'l Profit Assocs. I,* 274 S.W.3d 672, 678 (Tex. 2009) (orig. proceeding) (per curiam)); *Pennzoil Co. v. Arnold Co.,* 30 S.W.3d 494, 498 (Tex.App.--San Antonio 2000, consolidated appeal and orig. proceeding) (holding claims that a party to distributorship contract and third party tortiously interfered and conspired to tortiously interfere with existing contracts and prospective business relations of other party to distributorship contract in order to justify termination of the distributorship were within scope of distributorship contract's "arising out of or relating to" arbitration clause); *and Hou-Scape, Inc v. Lloyd,* 945 S.W.2d 202 (Tex.App.--Houston [1st Dist.] 1997, orig. proceeding) (per curiam) (holding counterclaims by general contractor against its subcontractor for fraud and misrepresentation, DTPA violations, negligence and gross negligence, libel and defamation, and tortious interference were within scope of subcontract's "arising out of or related to" arbitration clause).

Moreover, while as a general rule courts broadly construe the phrase "in connection with," *see Key Air, Inc. v. Comm'r of Revenue Servs.,* 294 Conn. 225, 983 A.2d 1, 8 n.11 (Conn. 2009) (listing cases), this breadth is not unlimited. Construing the Operating Agreement as subsuming all transactions, regardless of their nature, involving RTMK and any of its members leads to absurd results. For example, all

8

landlord-tenant disputes regardless of nature brought by Soncy Partnership or Lubbock Partnership would necessarily have to be filed in a Delaware court. We will not construe an agreement in a manner that produces an absurd result. *See Lane v. Travelers Indem. Co.,* 391 S.W.2d 399, 402 (Tex. 1965) (refusing to construe contract of insurance in manner leading to absurd result). We conclude the underlying suit is not "in connection with" the Operating Agreement and therefore does not implicate the agreement's forum-selection clause.

Interrelationship of Agreements

Ruby Tequila's also argues the leases, the Release, the Amendment and the Operating Agreement are "interrelated agreements subject to the forum-selection provisions." To reach its conclusion that disputes under the leases are subject to the forum-selection clause contained in the Release, Ruby Tequila's lays out a construction of those contracts that relies heavily on releasing language in the Release and language of an Exhibit E to the Release, together with a merger clause contained in the Release. Ruby Tequila's further concludes that because the Operating Agreement was attached as an exhibit to the Release its forum-selection clause also is applicable to the underlying suit.

Without intending any comment on the merits of the contentions of Ruby Tequila's that the claims asserted in the underlying suit have been released, we simply say that we do not agree with Ruby Tequila's that the terms of the Release made it "the controlling agreement among the entirety of [the] parties' relationships" so as to make the forum-selection clause contained in the Release, or that contained in the Operating

9

Agreement, applicable to the leases. *See Calpine Producer Services, L.P. v. Wiser Oil Co.,* 169 S.W.3d 783, 787 (Tex.App.--Dallas 2005, no pet.) (when construing a contract, the court takes the intention of the parties from the instrument itself and not from the parties' present interpretation).

Citing *In re Lisa Laser* and *In re Laibe Corp.,* Ruby Tequila's also argues the Supreme Court of Texas has resolved "factual scenarios very similar to the one at issue here" in a manner favorable to the interpretation it posits. We disagree.

In *Lisa Laser,* 310 S.W.3d 880, Exhibit F to a product distribution agreement contained a forum-selection clause vesting exclusive jurisdiction and venue of "any disputes arising out of this agreement" in specified California courts. The product manufacturer and its affiliate filed a motion to dismiss based on the forum-selection clause, which the trial court denied. After the court of appeals denied mandamus relief, the manufacturer and affiliate pursued mandamus in the supreme court. *Id.* at 881-82. In discussing the breadth of the forum-selection clause, the supreme court first concluded that the distribution agreement and Exhibit F were not separate, or even separable, agreements. *Id.* at 885. Finding the documents instead should be read together, the court noted their interdependence. Exhibit F was no more than the standard terms of purchase, lacking price and quantity terms. The distribution agreement was likewise incomplete requiring terms from its attached exhibits "to fully elucidate the parties' agreement." *Id.* Thus, concluded the court, the two documents must be read together and as so construed constituted "this agreement" for application of the forum-selection clause. *Id.*

10

The facts of the present matter are readily distinguishable from those presented by *Lisa Laser*. At the outset, it must be noted that the terms of the forum-selection clause in *Lisa Laser* differs significantly from that in the Release. The clause in *Lisa Laser* specified a California forum for any disputes arising out of the agreement. The clause in the Release provides for claims against parties like Ruby Tequila's to be litigated in Delaware but claims against parties like Soncy Partnership and Lubbock Partnership to be litigated in Texas. Next, and importantly, the 2010 Release and the 2008 leases stand alone without mutual dependence, each integrated, independent agreements. *See Lisa Laser*, 310 S.W.3d at 885-86 (distinguishing *IKON Office Solutions, Inc. v. Eifert,* 2 S.W.3d 688, 696 (Tex.App.--Houston [14th Dist.] 1999, no pet.)). And, as noted, the obligations Soncy Partnership and Lubbock South claim the defendants have violated arose from the leases, not from the Release. On the face of the pleadings filed by the plaintiffs Soncy Partnership and Lubbock South, the underlying suit is not one "asserting a breach of the Release." This is not an instance like *Lisa Laser*, in which the court found the plaintiff was attempting to enforce its contract but avoid its terms. *Id.* (quoting *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 135 (Tex. 2005) (plaintiff "cannot both have his contract and defeat it too")). Here it is Ruby Tequila's who asserts the terms of the Release as an affirmative defense in the underlying suit, not the plaintiffs.

*Laibe Corp.,* 307 S.W.3d 314, is even less helpful to Ruby Tequila's position. That case concerned a single transaction, "a routine sale of equipment between two business entities[.]" *Id*. at 317. As we read the Texas Supreme Court's opinion, the issue was not whether the dispute fell within the scope of the forum-selection clause

contained in their contract, but whether the plaintiff met the heavy burden one resisting a forum-selection clause shoulders. *Id.* at 316. Because we find the trial court's denial of Ruby Tequila's motion to dismiss may be sustained by the conclusion the underlying suit to enforce the leases is not within the scope of the forum-selection clauses in the Release, the Operating Agreement or the Amendment, we do not reach the issue addressed by *Laibe Corp.*

## Conclusion

For the reasons discussed, we conclude the trial court did not clearly abuse its discretion by denying Ruby Tequila's motion to dismiss. The petition for writ of mandamus of Ruby Tequila's is denied.

Per Curiam

12